**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG DIVISION**

---

WEST VIRGINA PARENTS FOR
RELIGIOUS FREEDOM, and ANDREW
WALDRON, PASTOR CHRIS
FIGARETTI, and JUDD UHL, *individually
and on behalf of their minor children, and on
behalf of others similarly situated*,

            *Plaintiffs,*

    against

DR. MATTHEW CHRISTIANSEN, in his
official capacities as the State Health Officer
and Commissioner of the Bureau of Public
Health; BELINDA MOSS, in her official
capacity as the Principal Administrator of
Cheat Lake Elementary School; and MINDY
WILSON, in her official capacity as the
Principal Administrator of the Jefferson
Elementary Center,

            *Defendants.*

---

> ELECTRONICALLY
> FILED
> 4/26/2023
> U.S. DISTRICT COURT
> Northern District of WV

Civil Action No.: 5:23-CV-158 BAILEY

---

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

    The issue presented to this Court is whether the State of West Virginia can force families with religious convictions against mandatory immunization to vaccinate their children as a condition of enrolling their children in school, while simultaneously allowing secular families to be exempt from the state's childhood vaccination requirements on medical grounds. Because this policy violates the First Amendment of the United States Constitution, Plaintiffs seek declaratory and injunctive relief.

    Plaintiffs West Virginia Parents for Religious Freedom ("**PRF**"), Andrew Waldron, Pastor Chris Figaretti, Judd Uhl for their complaint, against Dr. Matthew Christensen in his official

capacity as the State Health Officer; Belinda Moss in her official capacity as the Principal Administrator of Cheat Lake Elementary School; and Mindy Wilson in her official capacity as the Principal Administrator of the Jefferson Elementary Center, allege as follows:

## INTRODUCTION

1.      According to the Pew Research Center, 77% of West Virginians say that "they believe in God with absolute certainty"[1] and West Virginia is among the most religious states in America.[2]

2.      Plaintiffs possess deeply held religious beliefs that forbid them from vaccinating their children.

3.      Those beliefs have been substantially burdened by the State, and Plaintiffs' decisions to maintain their religious convictions have required significant sacrifices.

4.      West Virginia's compulsory school attendance law requires children between the ages of 6 and 17 to be enrolled in an education program. *See* W. VA. CODE § 18-8-1a. West Virginia's Supreme Court of Appeals has held that "[t]he mandatory requirements of 'a thorough and efficient system of free schools' found in . . . the West Virginia Constitution, make education a fundamental, constitutional right in this State." *Pauley v. Kelly*, 162 W. Va. 672, 707 (W. Va. 1979); *see also State v. Beaver*, No. 22-616, 2022 W. Va. LEXIS 700, at *36 ("Both the State Constitution and [West Virginia courts] have established that education is a fundamental right"); *see also Goss v. Lopez,* 419 U.S. 565, 95 (1975) (when state law creates a right to public education, that right becomes protected by the Due Process Clause of the Fourteenth Amendment).

---

[1] *See* PEW RESEARCH CENTER, *Religious Landscape Study*, https://www.pewresearch.org/religion/religious-landscape-study/state/west-virginia/ (last visited April 26, 2023).

[2] *See* PEW RESEARCH CENTER, *How religious is you state?* https://www.pewresearch.org/short-reads/2016/02/29/how-religious-is-your-state/?state=west-virginia (last visited April 26, 2023).

5.    Plaintiffs' children have nevertheless been excluded from West Virginia's educational system because of their parents' religious beliefs and are unable to access the practical and social benefits of a formal education that their secular peers enjoy.

6.    In West Virginia, it is unlawful for any child to attend "any of the schools of the state or a state-regulated child care center until he or she has been immunized against chickenpox, hepatitis-b, measles, meningitis, mumps, diphtheria, polio, rubella, tetanus and whooping cough" and "[n]o person shall be allowed to enter school without at least one dose of each required vaccine." W. VA. CODE § 16-3-4 (c) and (e) ("the **Compulsory Vaccination Law**").

7.    West Virginia's interest in ensuring that schoolchildren are vaccinated, however, certainly is not absolute, as evidenced by the fact that the State permits medical exemptions to the Compulsory Vaccination Law. *See id.* at § 16-3-4(h) (the State Health Officer may grant a medical exemption "upon sufficient medical evidence that immunization is contraindicated or there exists a specific precaution to a particular vaccine.").

8.    The fact that Plaintiffs' children are ineligible to enroll in West Virginia schools is not an incidental consequence of neutral, generally applicable legislation.

9.    Despite the fact that the State has determined that exemptions to the law are appropriate in some circumstances, and despite the fact that the overwhelming majority of West Virginians are religious, West Virginia prohibits religious exemptions for the mandated vaccines.[3]

---

[3] Forty-four states allow school-age children to be exempt from vaccinations for religious reasons and at least two others have provisions grandfathering in children with a prior religious exemption. *See* NATIONAL CONFERENCE OF STATE LEGISLATURES, *States with Religious and Philosophical Exemptions from School Immunization Requirements, available at* https://www.ncsl.org/health/states-with-religious-and-philosophical-exemptions-from-school-immunization-requirements (last visited April 26, 2023). Additionally, Mississippi's compulsory childhood vaccination system was recently enjoined by a federal district court because it allowed medical exemptions to mandatory vaccination requirements for schoolchildren but prohibited religious exemptions. *See Bosarge v. Edney*, No. 1:22cv233-HSO-BWR, 2023 U.S. Dist. LEXIS 67439, at *27 (S.D. Miss. Apr. 18, 2023).

10.    On the West Virginia Department of Health's webpage, the State makes clear that, while medical exemptions are available, religious exemption are not because "West Virginia does not grant non-medical exemptions."

11.    Recent United Supreme Court decisions make clear that this policy is not generally applicable under the First Amendment's Free Exercise Clause and therefore triggers strict judicial scrutiny. In *Fulton v. City of Philadelphia*, 141 S.Ct. 1868, 1878 (2021), the Supreme Court—in a 9-0 decision—held that the "creation of a formal mechanism for granting exceptions renders a policy not generally applicable" where that mechanism is unavailable to religious adherents. In deciding to apply strict scrutiny, the Supreme Court observed that the regulation in question had a procedure that was subject to individualized review and approval at the "sole discretion" of a government official. *Id.* at 1879.

12.    West Virginia has instituted an unconstitutional compulsory vaccination policy because it provides for medical exemptions that are reviewed on an individualized discretionary basis by state officials, but refuses to provide a commensurate religious exemption process for families seeking exemption from the policy for religious reasons.

13.    Moreover, other recent Supreme Court cases makes clear that the Compulsory Vaccination Law provokes strict scrutiny on independent grounds. A law intended to counteract the spread of infectious diseases is unconstitutional where it permits secular activity while prohibiting similar religious activity. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) (holding that a New York regulation involving COVID-19 restrictions that prohibited religious gatherings but permitted similar secular gatherings violated the First Amendment); *see also Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (holding that a California law

intended to slow the spread of COVID-19 violated the First Amendment because it treated "comparable secular activity more favorably than religious exercise.").

14.    West Virginia has made an unconstitutional value judgment that secular (*i.e.*, medical) motivations for opting out of compulsory immunization are permitted, but that religious motivations are not.

15.    Defendants' actions have deprived and will continue to deprive Plaintiffs of their inalienable rights under the United States Constitution.

16.    Defendants committed each act alleged herein under the color and authority of West Virginia law.

## JURISDICTION AND VENUE

17.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.§§ 1331 and 1343(a).  This action arises under the First Amendment to the United States Constitution.

18.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

19.    This Court has the authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, implemented through Rule 57, Federal Rules of Civil Procedure.

## PARTIES

**A.    Plaintiffs**

### West Virginia Parents for Religious Freedom

20.    Plaintiff West Virginia Parents for Religious Freedom (**"PRF"**) was formed to pursue and preserve religious freedom on behalf of West Virginia families. More specifically, the

group was formed to advocate on behalf of parents whose unvaccinated children are excluded from the State's educational system. PRF is a West Virginia, statewide, non-profit organization, established under West Virginia law and comprised of parents and other citizens whose purpose is to seek and/or obtain, either through legislative change, or litigation, the establishment of a religious exemption process to vaccination requirements for schools and daycares, or the recognition by law of such exemptions.

21.      Members of the group, who have various religious objections to vaccination, are located throughout the State of West Virginia. PRF contains members from many different religious backgrounds and denominations. Pastor Christopher Figaretti ("**Pastor Figaretti**") leads PRF.

22.      Further, the PRF's members otherwise have standing to sue in their own right as explained herein, the interests it seeks to protect in this litigation are germane to the purpose of the PRF, and neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit.

### Pastor Chistopher Figaretti

23.      Plaintiff Pastor Figaretti is a citizen of West Virginia and resides in Wheeling, Ohio County, with his wife and two children.

24.      He is the leader of PRF.

25.      Pastor Figaretti has been a Christian for 48 years and has surrendered his entire life to his religious convictions. His religious beliefs inform every aspect of his life, including how he raises his children.

26.      Pastor Figaretti is the Lead Pastor at the Vineyard Church in Wheeling, West Virginia.

27.     Pastor Figaretti is father to a 15-year-old daughter, J.F., and an 18-year-old son, C.F.

28.     Both teens are partially vaccinated. However, in or around 2014, when the children were in primary school and kindergarten, Pastor Figaretti and his wife developed strong religious objections to vaccinating their children with any additional vaccines.

29.     After their children received some vaccines, the Figarettis were alerted to the full extent of abortion connections to childhood vaccine research and development. Specifically, the use of aborted fetal cell lines in the research, production, and testing of childhood vaccines. In Pastor Figaretti's system of religious beliefs, abortion is an abomination and being compelled to inject products into his children's bodies that rely on abortion for their existence is a direct attack upon his religious convictions and faith.

30.     After deep thought on the topic, Pastor Figaretti also developed religious objections to vaccinating his children based on his belief that he should not tinker with the immune system that God blessed his children with because the body is a temple of the Holy Spirit, which makes the body by definition holy and sacred.

31.     Because they are non-compliant with the Compulsory Vaccination Law, C.F. and J.F. attend school in Ohio, one of the forty-four states that permit religious exemptions to childhood vaccination requirements.

32.     C.F and J.F. travel across state lines every morning to attend East Richland Christian School, just outside of St. Clairsville, Ohio, which is a thirty-minute commute one-way from their home. Consequently, the Figarettis spend a minimum of one-hour per day during the week driving to and from Ohio, and Mrs. Figaretti for years spent two hours per day commuting to drop the children off in the morning and then return to pick them up from school in the afternoon.

33.    J.F. desires to attend Central Catholic High School ("**Central Catholic**") in Wheeling, West Virginia. Central Catholic offers an exceptional education and maintains a very good theatre program, which J.F. has a strong desire to join. J.F. also has close friends at Central Catholic that are part of the West Virginia community she grew up in and presently lives in.

34.    Pastor Figaretti would enroll J.F. at Central Catholic if a religious exemption option were available in West Virginia.

35.    Pastor Figaretti began the admissions process at Central Catholic for J.F. He requested that J.F. be permitted to enroll at Central with a religious exemption. *See* Exhibit 1, Pastor Figaretti Enrollment Request.

36.    School administrators responded that there "are no religious exemptions extended by the state" and that "Central Catholic High School follows the state of West Virginia guidelines regarding Immunization." *Id.*

37.    Pastor Figaretti also called the West Virginia Department of Health and Human Resources and inquired whether he could seek a religious exemption for J.F. to attend school in West Virginia. In response, a Department of Health official stated that religious exemptions were not available in West Virginia, but he could seek a medical exemption for his children.

38.    Despite being excluded from the State's educational system, Pastor Figaretti's children regularly interact with their West Virginia peers outside of school on a daily basis (*e.g.,* at group church gatherings and at various other community activities).

**Judd Uhl**

39.     Plaintiff Judd Uhl ("**Mr. Uhl**") is a citizen of the state of West Virginia, and resides in Parkersburg, Wood County, with his wife Rebecca Uhl ("**Mrs. Uhl**") and their three children, V.U. (8 years old), E.U. (6 years old), and A.U. (3 years old).

40.     The Uhls are members of PRF.

41.     The Uhls have been married for 17 years, and it is their highest priority to raise their children in accordance with their Christian beliefs.

42.     The Uhls attend church regularly, pray together as a family, and dedicate time weekly to Bible study.

43.     The Uhl's Christian beliefs inform every aspect of their lives, especially how they raise their children.

44.     None of the Uhl's children have received any vaccines.

45.     The Uhls have decided not to vaccinate their children for religious reasons. Specifically, the Uhls believe life begins at conception and that abortion is murder. Accordingly, Mr. Uhl and his wife refuse any vaccination involved in any way with the fetal cells or cell lines of an aborted human being. Mr. Uhl also believes that injecting vaccines into his children's bodies in advance of an ailment would show a lack of faith in God. Finally, as part of his religious beliefs, Mr. Uhl is committed to raising his children in accordance with his religious beliefs and believes he would not be fulfilling his duties that God has entrusted him with if he were to allow his children to receive a vaccine.

46.     Because the Uhl children are unvaccinated, they are ineligible to attend school in West Virginia.

47.    Because it is the only option available for the family, Mrs. Uhl homeschools the three children. As a result, Mrs. Uhl can no longer work and pursue a professional career.

48.    Mrs. Uhl earned a master's in business administration degree from West Virginia University and has a marketable skillset and the desire to earn income for her family. She has rejected professional opportunities because she must homeschool her children.

49.    The Uhls desire to enroll their children in a West Virginia school, specifically in Wood County, but cannot do so without violating their religious beliefs against vaccination.

50.    Mrs. Uhl e-mailed the Principal of the Jefferson Elementary Center in Parkersburg, West Virginia to begin the enrollment process for V.U. and E.U.

51.    Mrs. Uhl stated to school administrators that she "would like to request a religious exemption for vaccinations" and would "provide a statement outlining our religious exemptions if needed." *See* Exhibit 2, Plaintiff Uhl Religious Exemption Request.

52.    In response, a school administrator outlined the process for seeking a medical exemption, but instructed that West Virginia "does not allow religious exemptions." *Id.*

53.    The Uhls desire for their children to have access to the State's formal educational system, whether at a public or private school, so their children can enjoy the practical and social benefits that a traditional education offers, benefits the Uhls believe homeschooling lacks.

54.    The Uhl children participate in recreational sports leagues and regularly interact with other children who attend West Virginia public and private schools.

55.    The Uhl children also regularly interact with other children at church and attend a variety of different community events with other children present. For example, the children regularly interact with other children at church and at local parks, and often attend events at

Anderson Hancock Planetarium, Pathway and Cornerstone Co-ops, skate parties at Skate Country Skating, and ballets and plays at local schools.

56.     The Uhl children are not precluded from any social activities in West Virginia, except for being enrolled in the State's educational system.

57.     Because their children are categorically excluded from receiving a formal education in West Virginia, the Uhls are considering moving out of state to Ohio in order to access a religious exemption so they can obtain a formal education for their children and simultaneously uphold their religious convictions.

### Andrew Waldron

58.     Plaintiff Andrew Waldron ("**Mr. Waldron**") is a resident of Morgantown, Monongalia County, West Virginia. Mr. Waldron and his wife Cadina Waldron ("**Mrs. Waldron**") have two children together who are completely unvaccinated, N.W. (twenty-one months old), and C.W. (four years old).

59.     Mr. Waldron is a member of PRF.

60.     Mr. Waldron is a Christian and his religious beliefs inform every aspect of his life, especially how he and his wife raise their children.

61.     Mr. Waldron possesses sincere religious objections to vaccinating his children on multiple fronts. First, he formed religious objections after learning of the ingredients contained in vaccines, which include formaldehyde and animal and blood tissue. Based on his belief that the body is the Temple of the Holy Spirit, Mr. Waldron cannot inject these substances into his children's bodies. Mr. Waldron also holds deeply held religious convictions against abortion. After learning that abortion and fetal cell research was heavily involved in the design, development, and testing of childhood vaccines, Mr. Waldron developed additional religious objections to injecting

11

vaccines into his children's bodies that depend on abortion to exist. Finally, Mr. Waldron has religious objections to preemptive medical treatments, including vaccination, because it gives into fear and in his system of religious beliefs exhibits a lack of faith in God.

62.    In the absence of a religious exemption option, the Waldron family will be forced to homeschool C.W. and N.W.

63.    The Waldrons believe that the inability to access a formal education with have a profound and negative effect on their children's social development.

64.    Mr. Waldron desires C.W. to attend school at Cheat Lake Elementary school for preschool.

65.    Accordingly, Mr. Waldron attempted to enroll C.W. at Cheat Lake Elementary and requested that he be granted a religious exemption. School administrators responded that West Virginia "does not accept religious exemptions for required immunizations" and explained that the State "only accepts medical exemptions". *See* Exhibit 3, Plaintiff Waldron Religious Exemption Request.

66.    Both Waldron children regularly interact with children in their community who attend public and private schools throughout Monongalia County.  N.W. and C.W. attend Sunday school and church weekly and have regular play dates with children in Morgantown. The family also regularly visits the science exhibition hall, where they have an annual membership.

**B.    Defendants**

67.    Defendant Dr. Mathew Christiansen ("**Dr. Christiansen**") is made party to this action in his official capacity as State Health Officer and Commissioner for the West Virginia Department of Health and Human Resources. Under West Virginia law, and specifically the Compulsory Vaccination Law, at W. VA. CODE § 16-3-4 (c), (d), (e), and (h), Dr. Christiansen is

specifically tasked with implementing and enforcing, and does implement and enforce, the mandatory immunization requirements of the Compulsory Vaccination Law for school-aged children.

68.    Defendant Mindy Wilson is the Principal Administrator of Jefferson Elementary Center in Parkersburg, West Virginia. Under West Virginia law, and specifically the Compulsory Vaccination Law, at W. VA. CODE § 16-3-4 (c), (d), and (e), she is specifically tasked with implementing and enforcing, and does implement and enforce, the mandatory immunization requirements of the Compulsory Vaccination Law through among other things rejecting any enrollment attempt by any child who is out of compliance with the Compulsory Vaccination Law and reporting "any person who attempts to be enrolled in a school" without proof of the vaccines required under the statute. *See* W. VA. CODE § § 16-3-4 (c) and (d). Plaintiff Judd Uhl attempted to enroll his unvaccinated children at Jefferson Elementary Center with a religious exemption, but was rejected by Defendant Wilson.

69.    Defendant Belinda Moss is the Principal Administrator of Cheat Lake Elementary School in Morgantown, West Virginia. Under West Virginia law, and specifically the Compulsory Vaccination Law, at W. VA. CODE § 16-3-4 (c), (d), and (e), she is specifically tasked with implementing and enforcing, and does implement and enforce, the mandatory immunization requirements of the Compulsory Vaccination Law through among other things rejecting any enrollment attempt by any child who is out of compliance with the Compulsory Vaccination Law and reporting "any person who attempts to be enrolled in a school" without proof of the vaccines required under the statute. *See* W. VA. CODE § § 16-3-4 (c) and (d). Plaintiff Andrew Waldron attempted to enroll his unvaccinated child at Cheat Lake Elementary School with a religious exemption, but was rejected by Defendant Moss.

## STATEMENT OF COMMON FACTS

### A.  Compulsory Childhood Vaccination in West Virginia

70.    Under the Compulsory Vaccination Law, every "child entering school or a state-regulated child care center in this state must" receive certain vaccines. W. VA. CODE § 16-3-4 (b).

71.    No child may be "admitted or received in any of the schools of the state" unless they have received these vaccines. *Id.* at § 16-3-4 (c).  And § 16-3-4 (d) requires school and childcare personnel to report to the commissioner (who is also the State Health Officer) any attempts to enroll unvaccinated children in schools.

72.    However, a child may be exempt from the requirements upon producing a certificate "granting the child . . . a[] [medical] exemption from the compulsory immunization requirements." *Id.* § 16-3-4 (h).

73.    While the State permits medical exemptions to its vaccination requirements, religious exemptions are not permitted.

74.    Teachers and those working in West Virginia's educational system are not subject to the vaccination requirements of the Compulsory Vaccination Law.

75.    Notably, many of the vaccines required under the Compulsory Vaccination Law were not placed on childhood immunization schedules until the 1990's and early 2000's.  As such, many teachers and other adults working in West Virginia's educational system born before 1990 have never been required to inject these vaccines.

76.    Moreover, several of the vaccines required by the Compulsory Vaccination Law do not prevent infection and transmission of the pathogen they protect against; they only provide an undefined level of personal protection, a benefit which Plaintiffs gladly decline in favor of upholding their religious convictions.

14

**B. Developments Impacting the Compulsory Vaccination Law West Virginia**

77.    There have been several notable developments impacting the Compulsory Vaccination Law. More specifically, religious objections to abortion and fetal cell entanglement in medical research have increased dramatically, and there have been several directly on-point Supreme Court decisions dictating that the Compulsory Vaccination Law must be subjected to strict judicial scrutiny.

78.    Several childhood vaccines were derived directly from aborted fetal cells. Others depend on these fetal cells for testing, design, and/or manufacture. Most other vaccines, even if not directly associated with aborted fetal cells themselves, are made by manufacturers who profit from the use of these aborted fetal cells. Under many circumstances, these aborted fetal cells would be illegal to harvest today under the state's abortion ban signed into law in September 2022, and yet their continued use, and profit derived from an abortion, is condoned through the Compulsory Vaccination Law.

79.    For example, when researching and developing childhood vaccines—many of which are required by West Virginia's Compulsory Vaccination Law—in just one study over seventy-five normally developing babies were aborted, and while keeping the fetuses alive for harvesting their body parts, had nearly every body part chopped up into little cubes to culture viruses on, including chopping up their tongues, livers, pituitary glands, kidneys, and hearts.[4]

80.    Further, many of the required vaccines contain genetic material derived from aborted fetuses.

---

[4] *See* PUBMED, *Cytological Virological and Chromosomal Studies of Cell Strains from Aborted Human Fetuses*, (May 1966) *available at* https://pubmed.ncbi.nlm.nih.gov/5949788/; *see also* video discussing this study*, available at* https://fb.watch/k6RSEDRejB/

81.    Forty-four states have legislation allowing school-age children to be exempt from mandatory vaccination laws for religious reasons.

82.    Since 1998, there have been legislative proposals for a religious exemption option. All have failed.

### C.  Recent Legal Developments Impacting the Compulsory Vaccination Law

83.    First Amendment jurisprudence has fundamentally evolved—especially during the COVID-19 pandemic—to require strict judicial scrutiny in cases virtually identical in all material respects to the instant case. Those decisions make clear that the Compulsory Vaccination Law cannot survive strict scrutiny.

84.    The United States Supreme Court has repeatedly protected Free Exercise rights in the face of state regulations intended to mitigate infectious diseases.

85.    In *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (*per curiam*), the Supreme Court ruled that a law is not neutral and generally applicable, and thus invokes strict scrutiny review, if it treats "*any* comparable secular activity more favorably than religious exercise." *Id.* at 1296 (emphasis in original). In *Tandon,* California regulations intended to slow the spread of Covid-19 limited religious gatherings but treated comparable secular gatherings—such as getting haircuts and retail shopping—more favorably. *Id.* at 1297. The Court applied strict scrutiny and granted a preliminary injunction in favor of the religious plaintiffs.

86.    Notably, in the context of regulations intended to counteract infectious disease during an international pandemic, the Supreme Court held that strict scrutiny "is not watered down;" it "really means what it says." *Tandon*, 141 S. Ct. at 1298 (internal citations omitted).

87.    The Supreme Court reached a similar decision in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) when the state of New York restricted religious gatherings but permitted a similar secular gatherings.

88.    A couple of months after its *Tandon* ruling, the Supreme Court examined the issue of whether a regulation is generally applicable where it provides for secular exceptions that are unavailable to citizens with religious beliefs. In *Fulton v. City of Philadelphia*, 141 S.Ct. 1868, 1878 (2021), the Court held that the "creation of a formal mechanism for granting exceptions renders a policy not generally applicable" where that mechanism is unavailable to religious adherents. In deciding to apply strict scrutiny, the Court observed that the regulation in question had a procedure that was subject to individualized review and approval at the "sole discretion" of a government official. *Id.* at 1879.

89.    More recently, Mississippi's similar mandatory vaccination scheme that contained a medical exemption process but prohibited a religious exemption option was enjoined under the First Amendment after a federal district court examined the statute under *Fulton*. *See Bosarge v. Edney*, No. 1:22cv233-HSO-BWR, 2023 U.S. Dist. LEXIS 67439, at *27 (S.D. Miss. Apr. 18, 2023) (holding that Mississippi's mandatory vaccination scheme, which lacked a religious exemption option, provoked strict scrutiny review under *Fulton* and failed to satisfy strict scrutiny).

### D.  West Virginia's Discretionary Medical Exemption Process

90.    West Virginia has instituted a discretionary exemption to the Compulsory Vaccination Law that benefits certain individuals, and deliberately excludes others.

91.     Students are prohibited from seeking exemption from the required vaccines for religious reasons.  However, students are permitted to seek a medical exemption from the required vaccines.

92.     Through the plain language of the relevant statute, West Virginia has reserved discretion to accept or deny medical exemptions.

93.     The statute dictates in relevant part that the health commissioner "is authorized to grant . . . exemptions to the compulsory immunization requirements . . . on a statewide basis, upon sufficient medical evidence that immunization is contraindicated or there exists a specific precaution to a particular vaccine." W. VA. CODE § 16-3-4 (h).

94.     It offers no similar pathway for an exemption where the requirement substantially burdens a sincerely held religious belief.

95.     The medical exemption process includes even more discretion than what may be initially apparent.

96.     Under the statutory scheme, there are multiple levels of discretionary review whereby government officials and private physicians are empowered to press the red light or green light on each medical exemption request. At the first level of review, the state has delegated private health care providers discretion to determine the variety of circumstances which are eligible for a medical exemption, and those which are not.

97.     Acting on behalf of the state, these physicians conduct an individualized assessment of each request for a medical exemption and have latitude to decide whether to certify the request.[5]

98.     If and when the medical exemption form is signed by a physician, it is then forwarded to the State Immunization Officer who reviews each medical exemption request on a

---

[5] *See* Exhibit 4, West Virginia Medical Exemption Request Form.

case-by-case basis. If the exemption is ultimately approved by the State Immunization Officer, the student is permitted to attend school without having received all of the mandated vaccines.

99.    If the Immunization Officer denies the medical exemption, the decision can be appealed to the State Health Officer, who reviews the appeal on a case-by-case basis and determines whether to uphold or reverse the State Immunization Officer's decision. *See* W. VA. CODE § 16-3-4 (h)(4).

100.    A similar exemption process is unavailable to citizens with religious objections to compulsory vaccination. For example, Plaintiff Pastor Figaretti called the West Virginia Department of Health and Human Resources and requested that he be able to submit a religious exemption for his child. Health Department officials stated that religious exemptions were not allowed in West Virginia, but that he could pursue a medical exemption for his children.

101.    In case there were any doubt that religious exemptions shall not be allowed, while medical exemptions are permitted, the West Virginia Department of Health's webpage outlines the process for seeking and receiving a medical exemption but makes clear that religious exemption cannot be pursued because "West Virginia does not grant non-medical exemptions."

102.    While West Virginia forbids even submitting a religious exemption request, the State has granted many medical exemptions annually.

## COUNT I

**42 U.S.C. § 1983 – VIOLATION OF PLAINTIFFS' FIRST AMENDMENT FREE EXERCISE RIGHTS WITH RESPECT TO PLAINTIFFS' SINCERELY HELD RELIGIOUS BELIEFS**

103.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

104.    The First Amendment of the U.S. Constitution provides that: "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof."  This clause has been incorporated against the states. *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

105.    Parents have the right to "direct the religious upbringing of their children" and "when the interests of parenthood are combined with a free exercise claim […] more than merely a 'reasonable relation to some purpose within the competency of the State' is required to sustain the validity of the State's requirement under the First Amendment." *Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972).

106.    Courts should not inquire into the validity or plausibility of a person's beliefs; instead, the task is to determine whether "the beliefs professed [] are sincerely held and whether they are, in [a believer's] own scheme of things, religious." *United States v. Seeger*, 380 U.S. 163, 185 (1965).

107.    Plaintiffs' sincerely held religious beliefs that prohibit them from vaccinating their minor children have been unconstitutionally burdened by the State of West Virginia. Plaintiffs' attempts to enroll their children in school with a religious exemption request were rejected.

108.    West Virginia has pitted Plaintiffs' consciences against educating their children. West Virginia has created a system of public education whereby it guarantees an education to every student. *See, e.g., Pauley*, 162 W. Va. at 707 (holding that "[t]he mandatory requirements of

20

'a thorough and efficient system of free schools' found in . . . the West Virginia Constitution, make education a fundamental, constitutional right in this State." *see also State v. Beaver*, No. 22-616, at *36 ("Both the State Constitution and [West Virginia courts] have established that education is a fundamental right").

109.    Nevertheless, Plaintiffs' children cannot obtain a formal education without violating their family's religious convictions.

110.    However, West Virginia families with secular, medical motivations for declining compulsory immunization can be exempted from the same requirements.

111.    The Free Exercise Clause of the First Amendment protects against "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson v. Makin*, 142 S. Ct. 1987 (2022) (quoting *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U. S. 439, 450 (1988).  "In particular, [the U.S. Supreme Court has] repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Id.*

112.    The State of West Virginia has made an unconstitutional value judgment that secular (*i.e.*, medical) motivations for opting out of compulsory immunization are permitted, but that religious motivations are not.

113.    The Free Exercise Clause "protects not only the right to harbor religious beliefs inwardly and secretly. It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of (**or abstention from**) physical acts." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) (emphasis added).

114.    While West Virginia may have a general healthcare interest in promoting childhood immunization, the First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable legislation unless it is narrowly tailored to a compelling government interest.

115.    For multiple reasons, West Virginia's Compulsory Vaccination Law is neither neutral nor generally applicable. Government regulations "are not neutral and generally applicable, and therefore trigger strict scrutiny under the free exercise clause of the First Amendment, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296 (emphasis in original).

116.    Whether two activities are comparable for purposes of the free exercise clause depends on "the asserted government interest that justifies the regulation at issue." *Id.*

117.    Here, with regard to regulating the conduct of its secular and religious citizens, the government holds the same interest in preventing disease. Further, the secular and religious activities at issue are not only comparable, but they are also exactly the same (seeking exemption from compulsory vaccination).

118.    A law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton,* 141 S. Ct. at 1877.

119.    Whatever interest West Virginia may have in promoting childhood vaccination, its interests are not so extraordinary as to prohibit an exemption for secular reasons, and hence can similarly provide an exemption for religious reasons. Further, West Virginia does not prohibit unvaccinated children from visiting public libraries or museums, or from interacting with their

peers in any other way.  Nor does West Virginia require that adult faculty, staff members, or school visitors provide proof of vaccination.

120.    The Compulsory Vaccination Law fails the general applicability test on additional, alternative grounds because the medical exemption system provides for individualized discretionary review, but the State refuses to extend a commensurate exemption process to families with religious objections to vaccination.

121.    "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable . . . ." *Id.* at 1879.

122.    In such instances, the government may not refuse to extend the possibility for an exemption "to cases of religious hardship without compelling reason." *Id.* at 1872.

123.    Because its medical exemption process provides for discretionary review at multiple levels, West Virginia's Compulsory Vaccination Law fails the general applicability test.

124.     West Virginia has instituted a system of customized review – delegated first to private physicians and second to the State Immunization Officer and the Health Officer – who at each level conduct individualized review of medical exemption requests.

125.    Therefore, for multiple reasons, West Virginia's Compulsory Vaccination Law invokes heightened judicial scrutiny.

126.    West Virginia's Compulsory Vaccination Law cannot withstand strict scrutiny. A government policy survives strict scrutiny "only if it advances interests of the highest order and is narrowly tailored to achieve those interests," meaning that "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881 (quotation omitted). West Virginia can never make this showing considering that 45 other states have religious or philosophical exemption options to childhood vaccination requirements,

evidencing that a more narrowly tailored approach plainly exists, including in every single state neighboring West Virginia.

127.    Moreover, where utilization of such less restrictive means is required, the government "may no more create an underinclusive statute, one that fails truly to promote its purported compelling interest, than it may create an overinclusive statute, one that encompasses more protected conduct than necessary to achieve its goal." *Lukumi,* 508 U.S. at 578.

128.    Regarding under-inclusivity, where the government permits secular activities, such as a medical exemption, "it must show that the religious exercise at issue is more dangerous." *Tandon*, 141 S. Ct. at 1297.

129.    When a law is over-inclusive, its "broad scope . . . is unnecessary to serve the interest, and the statute fails for that reason." *Lukumi*, 508 U.S. at 578.

130.    West Virginia's Compulsory Vaccination Law cannot withstand heightened scrutiny because it is both over-inclusive and under-inclusive relative to the state interests it purportedly attempts to achieve. Instead of regulating with the precision necessary to avoid conflict with its citizens' free exercise rights, West Virginia has deployed a blunt legislative hammer and, in one stroke, obliterated every possibility for religious observance.

131.    West Virginia's compulsory vaccination scheme is under-inclusive because it only applies to children in a school setting. The mandate does not apply to non-school attending children (who regularly interact with their peers) nor to adults in the state, who comprise over 79 percent of West Virginia's population.[6]

---

[6]  *See* U.S. CENSUS BUREAU, *QuickFacts West Virginia*, https://www.census.gov/quickfacts/WV (stating that 79.9% of West Virginia's population is over the age of 18) (last visited April 26, 2023).

132.    The Compulsory Vaccination Law is also under-inclusive because children possessing a religious exemption would pose no greater threat than their secular peers with a medical exemption. Moreover, the immunization requirements do not apply to adults who are employed in West Virginia's school system, or to school visitors.

133.    Further, the existence of a religious exemption for attending school would have an immaterial impact in the number of individuals vaccinated in West Virginia. Nor would the existence of a religious exemption materially impact the overall percentage of vaccinated school children.

134.    Given that West Virginia boasts of the highest vaccination rates in the country, allowing a religious exemption for a handful of students, just as secular medical exceptions are permitted, would constitute an actual attempt at narrow tailoring.

135.    Because West Virginia's Compulsory Vaccination Law is simultaneously too narrow and too broad to fulfill the government interests in supposedly attempts to accomplish, and considering that forty-five other states allow exemptions for religious reasons, the State lacks a sufficiently compelling interest to invalidate Plaintiffs' free exercise rights, and the regulation lacks the narrow tailoring necessary to survive strict scrutiny review.

136.    Accordingly, the presence of a medical exemption option within the Compulsory Vaccination Law but absence of a religious exemption option has violated and continues to violate Plaintiffs' rights to free exercise of religion under the First Amendment.

137.    "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

138.    Because of Defendants' actions, Plaintiffs have suffered and continue to suffer irreparable harm.

139.    Absent injunctive and declaratory relief against the Compulsory Vaccination Law and injunctive relief against Defendants, Plaintiffs will have been and will continue to be harmed.

140.    Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights to free exercise of religion and an injunction against Defendants' actions as they relate to West Virginia's Compulsory Vaccination Law.

**CLASS ALLEGATIONS**

141.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

142.    On information and belief, the actions and violations herein complained of involve a few hundred parents and students in the State of West Virginia.

143.    Pursuant to FRCP 23(a), the class is: (i) so numerous that joinder of all members is impracticable with a few hundred potential Plaintiffs); (ii) there are questions of law or fact common to the class; (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class.

144.    Pursuant to FRCP 23(b)(ii), the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

145.    Plaintiffs seeks a Plaintiff class ("**Class**"), consisting of those persons who: (i) are citizens of West Virginia, or would become citizens of West Virginia but-for the Compulsory Vaccination Law; (ii) are parents of school aged children or school aged children; (iii) have a sincerely held religious belief against vaccination; (iv) would enroll their children in West Virginia schools (public or private) but for the existence of the Compulsory Vaccination Law, and would

attempt to enroll their children in school were a religious exemption process available.  Excluded from this definition are the Court and its personnel.

## INJUNCTIVE RELIEF ALLEGATIONS

146.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

147.    Plaintiffs allege that both on its face and as applied, the Compulsory Vaccination Law violates their First Amendment rights and their right to be free from unlawful statutes.

148.    Plaintiffs are being and will continue to be irreparably harmed unless this Court enjoins Defendants from enforcing the Compulsory Vaccination Law.

149.    Plaintiffs have no plain, speedy, and adequate remedy at law to prevent Defendants from enforcing the Compulsory Vaccination Law.

150.    If not enjoined by this Court, Defendants will continue to implement and enforce the Compulsory Vaccination Law in violation of Plaintiffs' constitutional rights.

151.    Accordingly, injunctive relief is appropriate.

## DECLARATORY RELIEF ALLEGATIONS

152.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

153.    Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201. An actual and substantial controversy exists between Plaintiffs and Defendants as to their legal rights and duties with respect to whether West Virginia's Compulsory Vaccination Law, which allows for secular but not religious exemptions, violates the United States Constitution.

154.    The case is presently justiciable because the Compulsory Vaccination Law and absence of any religious exemption to the same applies to Plaintiffs and their children, who are currently harmed by being excluded from school.

155.    Declaratory relief is therefore appropriate to resolve this controversy.

### PRAYER FOR RELIEF

Pursuant to 42 U.S.C. § 1983, it is appropriate and proper that a declaratory judgment be issued by this Court, declaring that the Compulsory Vaccination Law is unconstitutional. Pursuant to 42 U.S.C. § 1983 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that the Court issue preliminary and permanent injunctions prohibiting Defendants from enforcing the Compulsory Vaccination Law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants and provide Plaintiffs with the following relief:

A.    A preliminary and permanent injunction prohibiting Defendants, their agents, servants, employees and any other persons acting on their behalf from enforcing W. VA. CODE § 16-3-4 unless they provide an option for requesting a religious exemption;

B.    Declare that W. VA. CODE § 16-3-4 is unconstitutional on its face;

C.    Declare that W. VA. CODE § 16-3-4 is unconstitutional as applied to Plaintiffs;

D.    Declare that W. VA. CODE § 16-3-4 violates Plaintiffs' First Amendment right to free exercise of religion;

E.    Grant Plaintiffs reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable authority; and

F.    For any such other and further relief as the Court deems equitable and just under

the circumstances.


Dated: April 26, 2023.                 Respectfully submitted,

                                        JOHN H. BRYAN LAW

                                        /s/ *John H. Bryan*
                                        _____
                                        John H. Bryan, Attorney
                                        West Virginia Bar No. 102159
                                        411 Main Street
                                        P.O. Box 366
                                        Union, West Virginia 24983
                                        Tel: (304) 772-4999
                                        Fax: (304) 772-4998
                                        jhb@johnbryanlaw.com


                                        SIRI & GLIMSTAD LLP

                                        Aaron Siri, Esq.*
                                        Elizabeth A. Brehm, Esq.*
                                        Walker D. Moller*
                                        Suzanne Heywood*
                                        745 Fifth Ave, Suite 500
                                        New York, NY 10151
                                        Tel: (212) 532-1091
                                        Fax: (646) 417-5967
                                        aaron@sirillp.com
                                        ebrehm@sirillp.com
                                        wmoller@sirillp.com
                                        sheywood@sirillp.com

                                        Christopher Wiest*
                                        25 Town Center Blvd., Suite 104
                                        Crestview, KY 41017
                                        Tel: (513) 257-1895
                                        Fax: (859) 495-0803
                                        chris@cwiestlaw.com

                                        *Attorneys for Plaintiffs*

                                        **pro hac vice* to be submitted

29

## VERIFICATION OF ANDREW WALDRON

I, Andrew Waldron, a citizen of the United States and of West Virginia, have read the foregoing Complaint and know the contents thereof as to myself, that the same is true to my own knowledge and as to all other matters on information and belief and I believe them to be true. I verify under penalty of perjury that the foregoing is true and correct.

Executed on this 25th day of April 2023 in Morgantown, Monongalia County, West Virginia.

Andrew Waldron

## VERIFICATION OF PASTOR CHRISTOPHER FIGARETTI

I, Pastor Christopher Figaretti, a citizen of the United States and of West Virginia, have read the foregoing Complaint and know the contents thereof as to myself, that the same is true to my own knowledge and as to all other matters on information and belief and I believe them to be true. I verify under penalty of perjury that the foregoing is true and correct.

Executed on this 25th day of April 2023 in Wheeling, Ohio County, West Virginia.

Pastor Christopher Figaretti

## VERIFICATION OF JUDD UHL

I, Judd Uhl, a citizen of the United States and of West Virginia, have read the foregoing Complaint and know the contents thereof as to myself, that the same is true to my own knowledge and as to all other matters on information and belief and I believe them to be true. I verify under penalty of perjury that the foregoing is true and correct.

Executed on this 25th day of April 2023 in Parkersburg, West Virginia.

Judd Uhl