**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

| | |
|---|---|
| WEST VIRGINIA PARENTS FOR RELIGIOUS FREEDOM, and ANDREW WALDRON, PASTOR CHRIS FIGARETTI, and JUDD UHL, *individually and on behalf of their minor children, and on behalf of others similarly situated*,<br><br>    *Plaintiffs,*<br><br>   against<br><br>DR. MATTHEW CHRISTIANSEN, *in his official capacities as the State Health Officer and Commissioner of the Bureau of Public Health*; BELINDA MOSS, *in her official capacity as the Principal Administrator of Cheat Lake Elementary School*; and MINDY WILSON, *in her official capacity as the Principal Administrator of the Jefferson Elementary Center*,<br><br>    *Defendants.* | Civil Action No.: 5:23-cv-00158-JPB |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**THEIR MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

The straightforward issue presented to this Court is whether the State of West Virginia can exclude unvaccinated children from school if their families have sincerely held religious beliefs that prohibit them from vaccinating their children, while simultaneously allowing families to be exempt from the state's vaccination requirements for secular reasons. Under recent Supreme Court precedent, West Virginia's statutory scheme of allowing medical exemptions—and discretionary review of those exemption requests—while prohibiting the possibility for religious exemptions is unconstitutional under the First Amendment's Free Exercise Clause.

Pursuant to W. Va. Code § 16-3-4, West Virginia has enacted a secular medical exemption option to its mandatory immunization requirements (the **"Compulsory Vaccination Law"**). The state's medical exemption scheme involves a personalized discretionary review process whereby state officials can grant or deny medical exemption requests on an individualized basis. However, the State refuses to extend a commensurate religious exemption process to families who possess religious objections to the compelled injections. Recent and directly on point Supreme Court precedent in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) makes abundantly clear that this policy triggers strict scrutiny review.

The Compulsory Vaccination Law cannot withstand strict scrutiny because it is not narrowly tailored to the government interests it purportedly attempts to achieve (attempting to prevent infectious disease). West Virginia's desire to curtail infectious diseases is not so urgent as to preclude secular exemptions to its mandatory vaccination requirements. The State also does not require proof of vaccination for its citizens to engage in virtually any other activity. Perhaps the most striking example is that West Virginia does not require proof of vaccination for adults who teach and work in the State's educational system. Through widespread inaction, West Virginia has

1

demonstrated that mandatory vaccination of its residents is not in fact a public health imperative. As such, the State cannot now credibly argue that its interests are sufficiently "compelling" to eliminate the free exercise rights of families seeking to enroll their children in school. Moreover, as shown by the forty-five states that have religious or philosophical exemptions, there are less restrictive means West Virginia could utilize to avoid conflict with Plaintiffs' religious convictions against compelled vaccination. West Virginia has simply chosen not to utilize less restrictive means, and, accordingly, the Compulsory Vaccination Law fails strict scrutiny review.

Plaintiffs, for themselves, their minor children, and on behalf of similarly situated persons, thus challenge the Compulsory Vaccination Law both facially and as applied.

## STATEMENT OF FACTS

### A. Plaintiffs' Sincerely Held Beliefs Prevent them from Vaccinating their Children

Plaintiffs, who are all members of Parents for Religious Freedom ("**PRF**"),[1] possess deeply held religious beliefs that prohibit them from vaccinating their children.[2] While the particulars of their beliefs differ, Plaintiffs are bound together in two significant regards: (1) their religious convictions that prevent them from vaccinating their children are deeply held and substantially burdened by the Compulsory Vaccination Law, and, (2) their decision to uphold their religious convictions has entailed significant sacrifices and caused irreparable harm.

---

[1] PRF was formed to advocate on behalf of parents whose unvaccinated children are excluded from the State's educational system. PRF is a West Virginia, statewide, non-profit organization, established under West Virginia law and comprised of parents and other citizens whose purpose is to seek and/or obtain, either through legislative change, or litigation, the establishment of a religious exemption process to vaccination requirements for schools and daycares, or the recognition by law of such exemptions. *See* Ver. Compl. at ¶ 20-22. PRF has the capacity to institute this action under W.V. CODE § 36-11-7 and common law.

[2] *See* ECF 1, Ver. Compl. at ¶¶ 25-30, 41-45, & 60-61.

West Virginia's compulsory school attendance law requires children between the ages of 6 and 17 to be enrolled in an education program, *see* W. VA. CODE § 18-8-1a, and a parent's failure to educate their children subjects the parent to potential criminal prosecution. *Id.* at § 18-8-2.

Each Plaintiff has been negatively impacted by the decision to exercise their sincerely held religious beliefs. Plaintiffs' children are categorically excluded from West Virginia's educational system. Plaintiffs Waldron, Uhl, and Pastor Figaretti each attempted to enroll their children in West Virginia schools with a religious exemption and were each rejected. *See* ECF 1, Ver. Compl. at ¶¶ 34-36, 49-52, & 64-65. Because of his religious objections to mandatory vaccination, Pastor Figaretti's children cross state lines each morning to attend school in Ohio, one of the forty-four states that permit religious exemptions to childhood vaccination requirements. *Id.* at ¶¶ 31-32. Pastor Figaretti's family has made this educational commute for years, an endeavor that has entailed significant additional expenses and lost time. *Id.* at ¶ 32. Plaintiff Uhl has been forced to homeschool his children as it is the only educational option in West Virginia available to his family. *Id.* at ¶¶ 46-47. Plaintiff Uhl's wife, who has earned a master's in business administration degree from West Virginia University and has a marketable skillset, cannot pursue a professional career, which she desires to do, and Mrs. Uhl has rejected professional opportunities because she homeschools the Uhl children. *Id.* at ¶¶ 47-48.

West Virginia's Supreme Court of Appeals has held that "[t]he mandatory requirements of 'a thorough and efficient system of free schools' found in . . . the West Virginia Constitution, make education a fundamental, constitutional right in this State." *Pauley v. Kelly*, 162 W. Va. 672, 707 (W. Va. 1979); *see also State v. Beaver*, No. 22-616, 2022 W. Va. LEXIS 700, at *36 ("Both the State Constitution and [West Virginia courts] have established that education is a fundamental

right"); *see also Goss v. Lopez,* 419 U.S. 565, 574 (1975) (when state law creates a right to public education, that right becomes protected by the Due Process Clause of the Fourteenth Amendment).

However, Plaintiffs' children have been barred from West Virginia's educational system because of the children's and their parents' religious beliefs. Plaintiffs' children are unable to access the practical and social benefits of a typical education that their secular peers enjoy. In short, without a religious exemption, Plaintiffs are deprived of the State's guarantee of a public education for their children unless they violate their sincerely held religious beliefs.

### B.  West Virginia's Compulsory Childhood Vaccination Scheme

Under the Compulsory Vaccination Law, every "child entering school or a state-regulated child care center in this state must" receive certain vaccines. W. VA. CODE § 16-3-4 (b).  No child may be "admitted or received in any of the schools of the state" unless they have received these vaccines. *Id.* at § 16-3-4 (c). However, a child may be exempt from the requirements upon producing a certificate "granting the child . . . a[] [medical] exemption from the compulsory immunization requirements." *Id.* While the State permits discretionary medical exemptions to its vaccination requirements, religious exemptions are not permitted.

### C.  Recent Legal Developments Impacting the State's Mandatory Vaccination Program

Forty-four states have legislation allowing school-age children to be exempt from mandatory vaccination laws for religious reasons,[3] and one other state was recently enjoined by a federal court to provide a religious exemption for the upcoming school year.

More importantly, for purposes of the case at hand, First Amendment jurisprudence has fundamentally evolved—especially during the Covid-19 pandemic—to require strict scrutiny in

---

[3] *See* NATIONAL CONFERENCE OF STATE LEGISLATURES, *States with Religious and Philosophical Exemptions from School Immunization Requirements,* https://www.ncsl.org/health/states-with-religious-and-philosophical-exemptions-from-school-immunization-requirements (last visited April 28, 2023).

cases virtually identical in all material respects to the instant case. The Supreme Court has protected Free Exercise rights in the face of state regulations intended to mitigate infectious diseases. In *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (*per curiam*), the Supreme Court ruled that a law is not neutral and generally applicable, and thus invokes strict scrutiny review, if it treats "*any* comparable secular activity more favorably than religious exercise." *Id.* at 1296 (emphasis in original). In *Tandon,* California regulations intended to slow the spread of Covid-19 limited religious gatherings but treated comparable secular gatherings—such as getting haircuts and retail shopping—more favorably. *Id.* at 1297. The Court applied strict scrutiny and granted a preliminary injunction in favor of the religious plaintiffs. The same was true in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).

A couple of months after its *Tandon* ruling, the Supreme Court examined the issue of whether a regulation is generally applicable where it provides for secular exceptions that are unavailable to citizens with religious beliefs. In *Fulton v. City of Philadelphia*, 141 S.Ct. 1868, 1878 (2021), the Court held that the "creation of a formal mechanism for granting exceptions renders a policy not generally applicable" where that mechanism is unavailable to religious adherents. In deciding to apply strict scrutiny, the Court observed that the regulation in question had a procedure that was subject to individualized review and approval at the "sole discretion" of a government official. *Id.* at 1879.[4]

---

[4] In 2007, a West Virginia mother sought a medical exemption for her youngest child after her older child experienced adverse reactions to the required vaccines. After the government denied her request, she brought a suit under the First Amendment, claiming that the denial of her child's medical exemption request violated her First Amendment Free Exercise rights. *Workman v. Mingo County Bd. of Educ.,* 419 Fed. App'x. 348, 351 (4th Cir. 2011). In an unpublished decision recorded in the Federal Appendix, a three-judge panel did not make a conclusive determination of whether strict scrutiny applied. However, the *Workman* Court ruled that even if strict scrutiny were triggered, the Compulsory Vaccination Law would survive heightened judicial scrutiny because of a Supreme Court decision from 1905—*Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905)—which was decided some 40 years before the advent of the tiered scrutiny scheme or even the modern incorporation doctrine. *See id* at 351. The *Workman* panel did not

More recently, Mississippi's similar mandatory childhood vaccination scheme that contained a medical exemption process but prohibited a religious exemption option was enjoined under the First Amendment after a federal district court examined the statute under *Fulton*. *See Bosarge v. Edney*, No. 1:22cv233-HSO-BWR, 2023 U.S. Dist. LEXIS 67439, at \*27 (S.D. Miss. Apr. 18, 2023) (holding that Mississippi's mandatory vaccination scheme provoked strict scrutiny review under *Fulton* and failed to satisfy strict scrutiny).

### D.  West Virginias's Discretionary Medical Exemption Process

West Virginia has instituted a discretionary exemption to the Compulsory Vaccination Law that benefits families with medical objections to compelled vaccination, but prohibits families with religious objections from seeking an exemption for religious reasons.

Through the plain language of the relevant statute, West Virginia has reserved discretion to accept or deny medical exemptions. The statute dictates in relevant part that the health commissioner "is authorized to grant . . . exemptions to the compulsory immunization requirements . . . on a statewide basis, upon sufficient medical evidence that immunization is contraindicated or there exists a specific precaution to a particular vaccine." W. Va. Code § 16-3-4 (h). It offers no similar pathway for an exemption where the requirement substantially burdens a sincerely held religious belief. The medical exemption process includes even more discretion than what may be initially apparent.

---

address the issue of whether the existence of medical exemptions rendered the law fatally underinclusive under more recent Supreme Court precedent, or perform an analysis of whether the State had failed to utilize the less restrictive means the overwhelming majority of states have deployed through enacting religious exemption options. After *Workman* was decided, in the context of regulations intended to counteract the Covid-19 pandemic, the Supreme Court announced that strict scrutiny "is not watered down;" it "really means what it says." *Tandon*, 141 S. Ct. at 1298 (internal citations omitted).  *Workman* is not binding precedent.  *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 338 (4th Cir. 2009) ("an unpublished opinion, does not constitute 'binding precedent'…").

Under the statutory scheme, there are multiple levels of discretionary review whereby government officials and private physicians are empowered to press the red light or green light on each medical exemption request. At the first level of review, the state has delegated private health care providers discretion to determine the variety of circumstances which are eligible for a medical exemption, and those which are not.[5] Acting on behalf of the state, these physicians conduct an individualized assessment of each request for a medical exemption and have latitude to decide whether to certify the request. If and when the medical exemption form is signed by a physician, it is then forwarded to the state's Immunization Officer for personalized review. If the exemption is approved, that student is permitted to attend school without having received all of the mandated vaccines.

If the Immunization Officer denies the medical exemption, the decision can be appealed to the State Health Officer, who reviews the appeal on a case-by-case basis and determines whether to uphold or reverse the State Immunization Officer's decision. *See* W. VA. CODE § 16-3-4 (h)(4).[6]

A similar exemption process is unavailable to citizens with religious objections to compulsory vaccination. For example, Plaintiff Pastor Figaretti called the West Virginia Department of Health and requested that he be able to submit a religious exemption for his child. Health Department officials stated they would not accept his religious exemption request, but explained that he could pursue a medical exemption. *See* ECF 1, Ver. Compl. at ¶ 100.

## **LEGAL STANDARD**

The movant seeking a preliminary injunction must establish: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued,

---

[5] *See* Exhibit 1, West Virginia Medical Exemption Request Form.

[6] *See also* Exhibit 2, West Virginia Denial of Medical Exemption Appeal Form.

(3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). Where, as here, the requested relief seeks to upend the status quo through a mandatory injunction, the moving party will prevail after showing the "facts and law" are "clearly" in their favor. *Anderson v. United States*, 612 F.2d 1112, 1114 (4th Cir. 1979).

The Fourth Circuit has upheld mandatory injunctions where constitutional rights were violated. *See, e.g., Faulkner v. Jones*, 10 F.3d 226, 234 (4th Cir. 1993) (upholding district court's grant of mandatory injunction for Fourteenth Amendment violations); *Joyner v. Forsyth Cnty.*, 653 F.3d 341, 355 (4th Cir. 2011) (same for First Amendment violation); *see also Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 348 (4th Cir. 2021) (reversing and remanding district court's denial of a mandatory injunction for violation of the Fourth Amendment). District courts in this circuit likewise have issued mandatory injunctions where, as here, clear constitutional violations were at issue. *See, e.g., Ctr. for Individual Freedom, Inc. v. Ireland*, 613 F. Supp. 2d 777, 781 (S.D. W. Va. 2009) (mandatory injunction for violations of the First Amendment); *Pruitt v. Wilder*, 840 F. Supp. 414 (E.D. Va. 1994) (same).

## **ARGUMENT**

## I.   **PLAINTIFFS CAN ESTABLISH SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS AND CLEAR ENTITLEMENT TO RELIEF**

Plaintiffs possess clear entitlement to relief under the First Amendment because the Compulsory Vaccination Law fails the general applicability and neutrality tests on multiple fronts and therefore invokes strict scrutiny review. The statute cannot survive strict scrutiny because it is not narrowly tailored to achieve the State's goal of curtailing infectious diseases. The First

Amendment protects free exercise, and is incorporated against the states. *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

The Supreme Court has repeatedly recognized that "[t]he free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Employment Div. v. Smith*, 494 U.S. 872, 877 (1990). "In applying the Free Exercise Clause, courts may not inquire into the truth, validity, or reasonableness of a claimant's religious beliefs." *Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 144 n.9, (1987). The "guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715-16 (1981).

"The Free Exercise Clause commits government itself to religious tolerance," and a law that is not neutral or generally applicable "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531-532 (1993). Strict scrutiny review is triggered if the law in question *either* is not generally applicable, or if it lacks neutrality. *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2422 (2022).

The Compulsory Vaccination Law triggers strict scrutiny for three independent reasons: first, it is not generally applicable under *Fulton*, 141 S. Ct. at 1877, because it has a mechanism for individualized secular exemptions but does not permit religious exemptions; second, it is neither neutral nor generally applicable under *Tandon*, 141 S. Ct. 1294, because it treats secular conduct more favorably than comparable religious conduct; and third, the rights here invoke other hybrid rights under *Smith*, 494 U.S. 872, 881-882, also triggering strict scrutiny.

A.   *The Compulsory Vaccination Law is Not Generally Applicable Under __Fulton__ Because it Allows for Individualized Discretionary Review of Medical Exemptions, but not for Religious Exemptions*

The Compulsory Vaccination Law fails the general applicability test because West Virginia's medical exemption system invites "the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Fulton*, 141 S. Ct. at 1877 (quoting *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 884 (1990)). "'[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of religious hardship without compelling reason.'" *Id.* (quoting *Smith*, 494 U.S. at 884).

West Virginia maintains a system of customized review for secular medical exemptions. In flagrant violation of the First Amendment under *Fulton*, an analogous exemption scheme is unavailable to citizens who possess religious objections to mandatory vaccination. Through the plain language of the relevant statute, the State gave itself latitude to accept or deny secular exemptions on an individualized basis. In fact, customized discretionary review occurs at three levels. Private physicians at the first level have independent discretion to reject or certify the family's exemption request. *See* W. VA. CODE § 16-3-4 (h)(1); *see also* Physician Certification Form, attached as "Exhibit 1". At the second level, assuming the physician certifies the request, the State Immunization Officer has authority to approve or deny the physician's decision. *Id.* at § 16-3-4 (h)(2). At the final level, the State Health Officer is authorized to uphold or reverse the State Immunization Officer's decision. *Id.* at § 16-3-4 (h)(4); *see also* Exhibit 2, Denial of Medical Exemption Appeal Form. However, the West Viginia Department of Epidemiology and Prevention Services' website makes clear that the State "does not grant non-medical exemptions," which obviously would include an exemption based on religious objections to compelled vaccination.

The Sixth Circuit recently upheld a preliminary injunction against a university's Covid-19 vaccination mandate—even though, unlike here, the policy allowed a religious exemption option—because the policy gave university administrators the latitude to approve or deny medical exemptions on an individualized basis, and as such invited the "the government to decide which reasons for not complying with the policy [were] worthy of solicitude." *Dahl v. Bd. of Trs. of Western Mich. Univ.*, 15 F.4th 728, 733-734 (6th Cir. 2021). In determining the university's vaccination mandate was not generally applicable, the *Dahl* court focused on the fact that the university performed individualized exemption analyses and maintained "discretion to extend exemptions in whole or in part." *Id.* In contrast, months before the *Dahl* decision, the Seventh Circuit held that the University of Indiana's vaccine mandate was neutral and generally applicable, and therefore subject to rational basis review, because it provided the possibility of a *non-discretionary* religious exemption to students. *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 592 (7th Cir. 2021).

More recently, a federal district court in Mississippi confronted a virtually identical situation to the case at hand and found that Mississippi's childhood vaccination scheme was neither neutral nor generally applicable after examining the state's exemption system under *Fulton*. *See Bosarge v. Edney*, No. 1:22cv233-HSO-BWR, 2023 U.S. Dist. LEXIS 67439, at *27 (S.D. Miss. Apr. 18, 2023) (granting preliminary injunction after finding that the state's vaccination scheme was neither "neutral or generally applicable" because "there was a method by which Mississippi officials could consider [and approve or deny] secular exemptions, particularly medical exemptions") (citing *Fulton*, 141 S. Ct. at 1877)).

**B.** **The Compulsory Vaccination Law is Neither Neutral Nor Generally Applicable Under _Tandon_ Because it Treats Secular Conduct "More Favorably" than "Comparable" Religious Exercise**

The Compulsory Vaccination Law also lacks general applicability on independent grounds under _Tandon v. Newsom_, 141 S. Ct. 1294 (2021). In fact, the challenged statute simultaneously fails both the neutrality and general applicability tests under _Tandon_ and _Church of Lukumi_ because it elevates secular conduct (non-vaccination for secular reasons) above comparable religious activity (non-vaccination for religious reasons). _See, e.g., Lukumi_, 508 U.S. at 531 ("Neutrality and general applicability are [interrelated], and . . . failure to satisfy one requirement is a likely indication that the other has not been satisfied"); _see also Tandon_, 141 S. Ct. at 1296 (government regulations "are not neutral and generally applicable and therefore trigger strict scrutiny under the free exercise clause of the First Amendment, whenever they treat **_any_** comparable secular activity more favorably than religious exercise") (_citing Diocese of Brooklyn_, 141 S. Ct. at 67) (emphasis in original)).

The _Tandon_ and _Diocese of Brooklyn_ rulings are directly on point because, like here, both cases confronted the tension between First Amendment free exercise rights and government attempts to counteract the spread of infectious disease. The Covid-19 pandemic presented a dramatically greater and more imminent public health risk than what exists in this case. Nonetheless, the _Tandon_ Court struck down the regulation in question under the First Amendment because California restricted at-home religious exercise while permitting secular activities that posed similar risks of Covid-19 transmission. _Id._ at 1297. The Supreme Court reached a similar conclusion in _Diocese of Brooklyn_, holding that pandemic-related regulations triggered strict scrutiny under the First Amendment because New York had restricted access to houses of worship while permitting access to secular facilities. _Diocese of Brooklyn_, 141 S. Ct. at 66. The _Tandon_

and *Diocese of Brooklyn* holdings make clear that First Amendment protections are not suspended during an international pandemic; and the rulings conclusively signal the Supreme Court's growing distrust of regulations that fail to treat comparable secular and religious activities with an even hand.

Whether two activities are comparable for purposes of the free exercise clause depends on "the asserted government interest that justifies the regulation at issue." *Tandon*, 141 S. Ct. 1294, 1296. Where First Amendment violations are at issue, Courts cannot rely on "broadly formulated" governmental interests, but must "'scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 431 (2006). Accordingly, the question in this case "is not whether the [Government] has a compelling interest in enforcing its [vaccination mandate] *generally*, but whether it has such an interest in denying an exception" from that requirement to an individual plaintiff *specifically*. *Fulton*, 141 S. Ct. at 1881.

It bears noting that where the government permits secular exceptions to a policy seeking to curtail the spread of a disease, it is the burden of the government to "show that the religious exercise at issue is more dangerous" than the secular activity the government permits. *Tandon*, 141 S. Ct. at 1297. Defendants can never make this showing here because a child possessing a medical exemption poses the same purported risk as would a child with a religious exemption. Moreover, West Virginia does not require teachers or others working in the educational system to be vaccinated, and these adults can refrain from being vaccinated for any reason whatsoever, including for secular reasons. The State also does not require proof of vaccination for virtually any other activity. In the context of regulations seeking to minimize the spread of infectious disease,

13

comparability "is concerned with the risks various activities pose, not the reasons why" individuals engage in those activities. *Id.* at 1296.

Here, the secular and religious activities at issue (non-vaccination) are not only comparable, they are exactly the same. The reasons for opting out of compulsory vaccination is the only thing that differs, and it "is no answer that [the Government] treats some comparable secular [activity] or activities as poorly as or even less favorably than the religious exercise at issue." *Id.* In short, the Government has made an unconstitutional value judgment that secular motivations for opting out of vaccination are permissible, but that religious reasons are not. *See Tandon*, 141 S. Ct. at 1297 (holding that the government cannot "assume the worst when people [exercise their religion] but assume the best when people [engage in secular activities]") (internal citations and quotations omitted)).

### C.   The Statute Triggers Strict Scrutiny Review on Alternative Grounds Because it Infringes on Other Constitutionally Protected Rights

In *Wisconsin v. Yoder*, 406 U.S. 205, 234-35 (1972), the Supreme Court acknowledged that Free Exercise rights can overlap with and be inherently intertwined with the right to make decisions regarding the upbringing of one's child, as recognized in *Pierce v. Socy. of Sisters*, 268 U.S. 510 (1925). In such circumstances, "when the interests of parenthood are combined with a free exercise claim of the nature revealed by this record, more than merely a reasonable relation to some purpose within the competency of the State is required to sustain the validity of the State's requirement under the First Amendment" (*i.e.*, requires that application of strict scrutiny). *Yoder*, 406 U.S. at 233. *See also Smith*, 494 U.S. at 881-81 (acknowledging hybrid rights that triggered strict scrutiny).

14

Here, the Compulsory Vaccination Law implicates Plaintiffs' right to free exercise as well as their rights to free speech and to regulate the upbringing and education of their children. These provide independent reasons for strict scrutiny. *Id.*; *Kennedy*, 142 S. Ct. at 2421.

In addition, as the Supreme Court acknowledged last year in *Kennedy*, "[w]here the Free Exercise Clause protects religious exercises, whether communicative or not, the Free Speech Clause provides overlapping protection for expressive religious activities," and further explaining:

> That the First Amendment doubly protects religious speech is no accident. It is a natural outgrowth of the framers' distrust of government attempts to regulate religion and suppress dissent. "[I]n Anglo-American history, . . . government suppression of speech has so commonly been directed *precisely* at religious speech that a free-speech clause without religion would be Hamlet without the prince."

*Kennedy,* 142 S. Ct. at 2421 (citing *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U. S. 753, 760 (1995)).

Each individual Plaintiff maintains profound objections to the practice of abortion and views childhood vaccinations as irredeemably connected to abortion. *See* ECF 1, Ver. Compl. at ¶¶ 29, 45, & 61. This is not an attenuated or foundationless religious objection. For example, in just one study over seventy-five normally developing babies were aborted, and while keeping the fetuses alive for harvesting their body parts, had nearly every body part chopped up into little cubes to culture viruses on, including chopping up their tongues, livers, intestines, pituitary glands, kidneys, and hearts. [7] In sworn testimony, Dr. Stanley Plotkin—who is commonly referred to as the "Godfather" of childhood vaccines, and one of lead researchers on the aforementioned study—candidly admitted he worked with the chopped up pituitary glands, kidneys, spleens, and hearts of

---

[7] *See* Exhibit 8, The Wistar Institute of Anatomy and Biology, *Cytological Virological and Chromosomal Studies of Cell Strains from Aborted Human Fetuses* (May 1966); *see also* deposition video discussing this study*, available at* https://fb.watch/k6RSEDRejB/

76 healthy normally developing babies, whose mutilated bodies were utilized in furtherance of his vaccine research. *See* excerpts of Deposition of Stanley Plotkin, Jan. 11, 2018, attached hereto as "Exhibit 3", at pdf pp. 9-12 of 17.

Additionally, many of the required vaccines contain genetic material derived from aborted fetuses, materials that would be injected directly into Plaintiffs' children's bodies if they were to comply with West Virginia's mandatory vaccination requirements. *See, e.g.,* Food and Drug Administration ("**FDA**") Package Insert for M-M-R II Vaccine, attached hereto as "Exhibit 4," at pdf p. 8 of 12 (stating the Measles, Mumps, and Rubella ("**MMR**") combination vaccine contains strains of "human diploid lung fibroblasts" cultured from a fetal cell line); *see also* FDA Package Insert for VARIVAX vaccine, attached hereto as "Exhibit 5," at pdf pp. 9-10 of 16 (stating the Varicella vaccine was propagated in "human diploid cell cultures" and "contains residual components of [a fetal cell line] including DNA and protein").

For Plaintiffs, to vaccinate their children means to be forced into an action that condones abortion. "As the Supreme Court has long recognized, even conduct can claim the protections of Free Speech where '[a]n intent to convey a particularized message [is] present, and . . . the likelihood [is] great that the message would be understood by those who viewed' or learned of the conduct." *New Hope Family Servs. v. Poole*, 966 F3d 145, 176 (2d Cir 2020) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). In abstaining from vaccinating their children, Plaintiffs are conveying the message that vaccination does not comport with their religious beliefs and way of life. *See* ECF 1, Ver. Compl. at ¶¶ 29, 45, & 61; *see also New Hope*, 966 F.3d at 170 ("when government 'direct[ly] regulat[es] . . . speech' by mandating that persons explicitly agree with government policy on a particular matter, it 'plainly violate[s] the First Amendment.'") (Quotations omitted). In requiring Plaintiffs to agree with a government policy

they view as inextricably intertwined with abortion, the Compulsory Vaccination Law violates Plaintiffs' free speech rights. *New Hope*, 966 F.3d at 170-71.

Because the Compulsory Vaccination Law is neither neutral nor generally applicable under either *Tandon* or *Fulton*, it invokes strict judicial scrutiny. On independent grounds, the infringement of Plaintiffs' free exercise rights, coupled with infringement of their rights to educate and speak and to make decisions regarding the upbringing of their children, involve hybrid rights that also trigger strict scrutiny under *Smith*, 494 U.S. at 881-882.

### D.   The Compulsory Vaccination Law Cannot Survive Strict Scrutiny

A law burdening religious exercise "that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of Lukumi*, 508 U.S. at 546 (internal citations omitted). Such regulations can survive strict scrutiny only where they advance "interests of the highest order" and are "narrowly tailored to achieve those interests." *Fulton,* 141 S. Ct. at 1881 (citations omitted). In the context of regulations targeting infectious disease, strict scrutiny "is not watered down"; it "really means what it says." *Tandon*, 141 S. Ct. at 1298 (citations omitted).

West Virginia has conclusively demonstrated through action and inaction that compulsory childhood vaccination, at the expense of its citizen's free exercise rights, does not constitute an interest of the highest order. The statute fails strict scrutiny for this reason alone. Further, even if West Virginia could demonstrate a sufficiently compelling interest to eliminate Plaintiffs' First Amendment rights, the Compulsory Vaccination Law is not narrowly tailored and accordingly fails strict scrutiny on this ground as well.

### 1.  West Virginia's interests are not sufficiently "compelling"

Whatever interest West Virginia has in attempting to prevent the transmission of infectious disease, it did not cause it to eliminate secular exemptions to mandatory immunization. A law

"cannot be regarded as protecting an interest of the highest order when it leaves appreciable damage to that supposedly vital interest unprohibited." *Church of Lukumi*, 508 U.S. at 547.

In the context of compulsory vaccination requirements, courts across the country have found the asserted interest to be insufficiently compelling where the government grants secular exceptions to an otherwise mandatory policy. *See, e.g., Doster v. Kendall*, 54 F. 4th 398, 423 (6th Cir. 2022) (stating that the existence of secular exemptions to compulsory Covid-19 vaccination policy "produc[ed] substantial harm" to the Air Force's "health and readiness interests" it "claim[ed] to be compelling"); *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 352 (5th Cir. 2022) (explaining that the Navy's decision to grant medical exemptions to its Covid-19 vaccination policy was a "telltale sign that the government's interest in enacting a liberty-restraining pronouncement [was] not in fact compelling"); *Schelske v. Austin*, No. 6:22-CV-049-H, 2022 U.S. Dist. LEXIS 229432, at *67 (N.D. Tex. 2022) (same). These decisions are consistent with the Supreme Court's reasoning that, where the government permits secular conduct that endangers its public health objectives, it cannot then credibly assert a compelling interest in regulating similar religious activity. *See, e.g., Church of Lukumi,* 508 U.S. at 542-546 (holding that a city's ban on animal sacrifice for religious reasons but corresponding allowance of other activities similarly endangering public health contradicted its purportedly "compelling" interest in safe animal disposal practices).

Further, Defendants must also show not only that there is a compelling interest in the abstract but must also demonstrate that the compelling interest is applicable *to the person. See, e.g., Fulton*, 141 S. Ct. at 1881 (the question "is not whether the [Government] has a compelling interest in enforcing its [vaccination mandate] *generally*, but whether it has such an interest in denying an exception" from that requirement to an individual plaintiff *specifically*). West Virginia

can never meet this standard because a child with a medical exemption poses the same purported threat to the State's interests as a child with a religious exemption. In addition, West Virginia apparently allows a significant number of unvaccinated children to be enrolled in its educational system who do not possess a medical exemption, strongly indicating West Virgina is more interested in eradicating certain disfavored religious beliefs than furthering its claimed public health imperative. For example, for the 2021-22 school year, vaccine non-compliance rates for West Virginia kindergarteners ranged from between 2 percent and 3.5 percent.[8]

In short, West Virginia has repeatedly demonstrated that its interests were never sufficiently compelling for purposes of satisfying the First Amendment's stringent standards. Therefore, the Compulsory Vaccination Law fails strict scrutiny for this reason alone.

## 2. The Compulsory Vaccination Law is not narrowly tailored

The Compulsory Vaccination Law cannot withstand strict scrutiny on alternative grounds because it is not narrowly tailored. When strict scrutiny applies, a government policy survives "only if it advances interests of the highest order and is narrowly tailored to achieve those interests," meaning that "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881 (quotation omitted). West Virginia can never satisfy this requirement given that 45 other states have religious or philosophical exemption options to childhood vaccination requirements, evidencing that a more narrowly tailored approach plainly exists, including in every single state neighboring West Virginia.

---

[8] *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *Vaccination Coverage and Selected Vaccines and Exemption Rates Among Children in Kindergarten – United States, 2021-22 School Year*, https://www.cdc.gov/mmwr/volumes/72/wr/mm7202a2.htm (detailing non-compliance percentages of between 2 and 3.5 percent for various required vaccines amongst West Virginia kindergarteners in the 2021-22 school year) (last visited April 28, 2023). Courts may take judicial notice of information contained in official government websites under Rule 201 of the Federal Rules of Evidence. *See, e.g., Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004).

Moreover, where utilization of less restrictive means is required, the government "may no more create an underinclusive statute, one that fails truly to promote its purported compelling interest, than it may create an overinclusive statute, one that encompasses more protected conduct than necessary to achieve its goal." *Church of Lukumi*, 508 U.S. at 578. Consequently, even if all of West Virginia's neighboring states had not demonstrated that less restrictive options exist and can be seamlessly implemented, the Compulsory Vaccination Law cannot withstand heightened scrutiny for additional reasons because it is both over-inclusive and under-inclusive relative to the government interests it purportedly attempts to achieve.

The State's vaccination scheme is under-inclusive because it only applies to children in a school setting. The mandate does not apply to non-school attending children (who regularly interact with their peers in other settings) nor to adults in the state, who comprise over 79% of West Virginia's population.[9] The State also does not require children or adults to provide proof of vaccination for nearly any activities, including employment in state government, accessing state parks or government buildings, or entering into any store, library, playground or restaurant. Nor does West Virginia require proof of vaccination for children to participate in recreational sports leagues or any other group children's activities. Despite noncompliance with the Compulsory Vaccination Law, Plaintiffs' children regularly interact with their peers at church, in sports leagues, and various community events. *See* ECF 1, Ver. Compl. at ¶¶ 38, 54, 55, & 66.

Even if the State's interest in immunizing its citizens could somehow logically be limited exclusively to children in a formal school setting (it cannot be), the law in question is still inescapably under-inclusive because it permits medical exemptions. Again, if children with a

---

[9] *See* U.S. CENSUS BUREAU, *QuickFacts West Virginia*, https://www.census.gov/quickfacts/WV (stating that 79.9% of West Virginia's population is over the age of 18) (last visited April 28, 2023).

medical exemption can safely attend school, there is no reason a child with a religious exemption cannot as well. West Virginia cannot demonstrate that non-receipt of a vaccine for religious reasons poses any more risk to their objectives than does non-receipt of a vaccine for medical reasons. *See Tandon*, 141 S. Ct. at 1296, 1297 (where "the government permits [secular] activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too."). The vaccination scheme also fails to capture conduct necessary to achieve the government's apparently limited interest of vaccination of those in school buildings because the requirements do not apply to adults who are employed in West Virginia's schools, or to school visitors.

The Compulsory Vaccination Law is also overbroad. The existence of a religious exemption would have an immaterial impact in the number of individuals vaccinated in West Virginia overall.  It also would be a miniscule, non-material percentage as compared to the number of vaccinated school children.  For example, Kentucky, a state that is demographically very similar to West Virginia, has a religious exemption to vaccination that is easy to obtain by completing a form, and the total number of religious *and* medical exemptions was less than 1 percent of kindergarteners in Kentucky for the 2020-21 school year[10] and an even more miniscule .01% of the total population of the state.[11] Similarly, the medical and religious exemption rates for children entering kindergarten are also minuscule and insignificant in the surrounding states of Ohio,

---

[10] *See* Kentucky Department of Public Health, excerpt of 2020-21 School Entry Survey, attached hereto as "Exhibit 6", at pdf pp. 19-24 of 24 (stating that for Kentucky kindergarteners, there were a total of 500 medical and religious exemptions combined out of 51,180 total students enrolled).

[11] *See* U.S. CENSUS BUREAU, *QuickFacts Kentucky,* https://www.census.gov/quickfacts/KY  (stating that as of July 1, 2021, Kentucky's population was estimated to be 4,506,589) (last visited April 28, 2023).

Virginia, Pennsylvania, and Maryland,[12] each of which also have an easily-obtained religious exemption.[13]

In sum, instead of regulating with the requisite precision to avoid conflict with its citizens' free exercise rights, West Virginia deployed a blunt legislative hammer and, in one stroke, obliterated every possibility for religious observance. In virtually identical circumstances, a federal district court recently found such a policy likely cannot withstand strict scrutiny. *See Bosarge*, No. 1:22-CV-233-HSO-BWR, 2023 U.S. Dist. LEXIS 67439, at *27. And the *Bosarge* decision is just the most recent example of a long line of cases finding vaccination mandates cannot survive strict scrutiny where religious objectors' beliefs are substantially burdened by compulsory vaccination policies. *See, e.g., U.S. Navy Seals 1-26,* 27 F.4th at 350-52; *Doster,* 54 F. 4th at 423-27; *Dahl,* 15 F.4th at 734-35; *Schelske,* No. 6:22-CV-049-H, 2022 U.S. Dist. LEXIS 229432, at *81-87; *Navy Seal 1 v. Austin*, 599 F. Supp. 3d 1233, 1242 (M.D. Fla. 2022); and *Thoms v. Maricopa Cnty. Cmty. Coll. Dist*., No. CV-21-01781-PHX-SPL, 2021 U.S. Dist. LEXIS 214822, at *32 (D. Ariz. 2021).

Accordingly, because it cannot withstand strict scrutiny review, the Compulsory Vaccination Law is unconstitutional.

---

[12] *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *Vaccination Coverage and Selected Vaccines and Exemption Rates Among Children in Kindergarten – United States, 2021-22 School Year*, https://www.cdc.gov/mmwr/volumes/72/wr/mm7202a2.htm (detailing percentages of religious and medical exemption rates combined for U.S. kindergarteners in all 50 states and territories for the 2021-22 school year) (last visited April 28, 2023)).

[13] The Compulsory Vaccination Law is also overbroad in that many of the school mandated vaccines in West Virginia do not prevent transmission of the target pathogen. *See* ECF 1, Ver. Compl. at ¶ 76.

## II.     THE REMAINING PRELIMINARY INJUNCTION ELEMENTS FAVOR RELIEF

### A.     *Plaintiffs Have Suffered and Continue to Suffer Irreparable Injury*

Plaintiffs have endured and continue to endure irreparable injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  That extends to the loss of "free exercise rights 'for even minimal periods of time.'" *Tandon*, 141 S.Ct. 1294 at 1297. And Fourth Circuit cases likewise establish this irreparable harm that stems from the loss of constitutional rights.  *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 190-191 (4th Cir. 2013); *Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 254-255 (4th Cir. 2003).

Here, the violation of Plaintiffs' First Amendment rights alone constitutes irreparable injury as a matter of law. *Tandon*, 141 S.Ct. 1294 at 1297. However, Plaintiffs have been irreparably harmed on additional fronts. Plaintiffs' children are categorically evicted from the State's educational system, even though West Virginia's Constitution combined with the Fourteenth Amendment guarantees a free public-school education. *See, e.g., Pauley*, 162 W. Va. at 707 (holding that "[t]he mandatory requirements of 'a thorough and efficient system of free schools' found in . . . the West Virginia Constitution, make education a fundamental, constitutional right in this State"); *see also Goss,* 419 U.S. at 574 (holding that when a state law creates a right to public education, that right becomes protected by the Due Process Clause of the Fourteenth Amendment).[14]

Plaintiffs Waldron, Uhl, and Pastor Figaretti each attempted to obtain a religious exemption to the State's mandatory vaccination policy for their children, and all were summarily rejected.

---

[14] To the extent Plaintiffs possess a fundamental right under the Fourteenth Amendment, that right overlaps with their First Amendment rights.

And Plaintiffs are subject to criminal prosecution under W. VA. CODE § 18-8-2 should they fail to educate their children.

Further, Plaintiffs have endured significant practical and financial hardships for upholding their religious convictions. The Uhl family—at the expense of Mrs. Uhl's career—has been forced to homeschool their children, the only option West Virginia permits for children absent a medical condition. *See* ECF 1, Ver. Compl. at ¶¶ 47-48. Similarly, Plaintiff Waldron will be forced to homeschool his child for the upcoming school year absent injunctive relief, *id.* at ¶ 62, and Pastor Figaretti's children have needed to cross state lines for years in order to receive a formal education in Ohio, where a religious exemption option is available. *Id.* at ¶¶ 31-32. Plaintiffs' injuries—past, ongoing, and imminent—cannot be remedied by a later-issued court order.

### B.    The Balance of Harms and the Public Interest in Protecting Civil Liberties Weigh in Favor of Injunctive Relief

The balance of harms and public interest preliminary injunction factors likewise strongly favor an injunction. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). An injunction will not disserve the public interest where it will prevent constitutional deprivations. *See Newson v. Albemarle Cnty. Sch. Bd.,* 354 F.3d 249, 261 (4th Cir. 2003) (explaining that "upholding constitutional rights serves the public interest"). Likewise, West Virginia will in no way be "harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions." *Legend Night Club v. Miller*, 637 F.3d 291, 302-03 (4th Cir. 2011).

West Virigina simply cannot demonstrate that the public interest requires its citizens to discard their religious convictions, and their constitutional rights, so their children can benefit from a formal education. The State also cannot credibly argue the public interest and balancing of harms requires that the government to compound constitutional and dignitary harms by causing Plaintiffs

to continue suffering significant personal and professional sacrifices should they maintain their religious beliefs.

## <u>CONCLUSION</u>

Plaintiffs possess clear entitlement to preliminary injunctive relief. West Virginia prohibits religious exemptions but permits discretionary secular exemptions to its mandatory immunization scheme. Both on its face and as applied, this policy violates the First Amendment. Accordingly, Plaintiffs respectfully request this Court to grant their motion for a preliminary injunction against the Compulsory Vaccination Law, to require the State to provide a process for seeking religious exemptions in the same manner it permits the option to pursue secular exceptions. A proposed order is attached as "Exhibit 7."

(signatures of counsel on following page)

(continued from *Plaintiffs' Memorandum in Support of Their Motion for Preliminary Injunction* on preceding page)

Dated: April 28, 2023.                    Respectfully submitted,

JOHN BRYAN LAW

*/s/ John H. Bryan*
John H. Bryan, Attorney
West Virginia Bar No. 102159
411 Main Street
P.O. Box 366
Union, West Virginia 24983
Tel: (304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com


SIRI & GLIMSTAD LLP

Aaron Siri, Esq.*
Elizabeth A. Brehm, Esq.*
Walker D. Moller*
Suzanne Heywood*
745 Fifth Ave, Suite 500
New York, NY 10151
Tel: (212) 532-1091
Fax: (646) 417-5967
aaron@sirillp.com
ebrehm@sirillp.com
wmoller@sirillp.com
sheywood@sirillp.com

Christopher Wiest*
25 Town Center Blvd., Suite 104
Crestview, KY 41017
Tel: (513) 257-1895
Fax: (859) 495-0803
chris@cwiestlaw.com

*Attorneys for Plaintiffs*

**pro hac vice* requests forthcoming

26

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2023, a true and correct copy of the foregoing was served by CM/ECF on all counsel or parties of record. I also certify that a correct copy of the foregoing, along with a copy of the summons and Complaint, will be served as soon as possible on each of the named Defendants at the following:

Dr. Matthew Christiansen, Commissioner
Bureau of Public Health
350 Capitol Street, Room 702
Charleston, WV 25301

Mindy Wilson, Principal
Jefferson Elementary Center
1103 Plum Street
Parkersburg, WV 26101

Belinda Moss, Principal
Cheat Lake Elementary School
154 Crosby Road
Morgantown, WV 26508

The summons' returns will reflect the date(s) of such service of this pleading. I certify under penalty of perjury that the foregoing is true and correct.

Dated this 28th day of April, 2023

/s/ *John H. Bryan*
John H. Bryan, Attorney
West Virginia Bar No. 102159
411 Main Street
P.O. Box 366
Union, West Virginia 24983
Tel: (304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com