IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

**WEST VIRGINIA PARENTS FOR RELIGIOUS FREEDOM, ANDREW WALDRON, PASTOR CHRIS FIGARETTI,** and **JUDD UHL**,

      Plaintiffs,

v.

**DR. MATTHEW CHRISTIANSEN**, in his official capacities as the State Health Officer and Commissioner of the Bureau of Public Health, **BELINDA MOSS**, in her official capacity as the Principal Administrator of Cheat Lake Elementary School, and **MINDY WILSON**, in her official capacity as the Principal Administrator of the Jefferson Elementary Center,

      Defendants.

CIVIL ACTION NO. 5:23-CV-158
The Hon. John P. Bailey

**DEFENDANT DR. MATTHEW CHRISTIANSEN'S PRELIMINARY RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION <u>AND EXPEDITED CONSIDERATION</u>**

    Defendant Dr. Matt Christiansen, sued in his official capacity as State Health Officer and Commissioner of the Department of Health and Human Resources' Bureau for Public Health, respectfully submits the following preliminary response to Plaintiffs' Motion for Preliminary Injunction and Expedited Relief (ECF 4) in advance of tomorrow's expedited hearing.

## INTRODUCTION

    The relief sought by Plaintiffs' motion for preliminary injunction is as drastic as it is needlessly rushed. It implicates questions fundamental to our constitutional order and the separation of powers, which places the traditional police power—lawmaking for public health and safety—within purview of the legislative branch. The West Virginia Legislature has found

and declared that "early immunization for preventable diseases represents one of the most cost-effective means of disease prevention," and that "[i]mmunization of children at an early age serves as a preventive measure both in time and money and is essential to maintain our children's health and well-being." W. Va. Code § 16–3–5(a). At the same time, no one questions that the First Amendment places important limitations on government action and that the judiciary plays a role in policing those boundaries.

But this Court need not wade deeply into the debate over the many thorny issues on which Plaintiffs are desperate for this Court to hurriedly opine. Why? Because under the traditional four factor test, Plaintiffs fail to make the necessary "clear showing" that they are entitled to the "extraordinary relief" of a preliminary injunction. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). In the Fourth Circuit, "each" of the "four factors *must be satisfied* to obtain preliminary injunctive relief." *Henderson for Nat'l Lab. Rels. Bd. v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018) (emphasis added). Plaintiffs' failure to make a "clear showing" on any one factor, therefore, means that no preliminary injunction can issue. Here, for example, Plaintiffs' failure to clearly show irreparable harm, or that the public interest favors broad, non-medical exemptions from childhood immunization requirements is reason enough to deny the motion.

Accordingly, the motion should be denied. Alternatively, given the abbreviated timeframe before the hearing, the Court should defer the motion and permit Dr. Christiansen additional time and leave to supplement the record to ensure all issues are fully and fairly presented.

# ARGUMENT

"A preliminary injunction is an extraordinary remedy never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and its "principal function . . . is to maintain the status quo." *Di Biase v. SPX Corp.*, 872 F.3d 224, 231 (4th Cir. 2017). To obtain a preliminary injunction, Plaintiffs must clearly demonstrate the presence of all four factors: (1) that they are "likely to succeed on the merits"; (2) "irreparable harm" is "likely" "in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Henderson for Nat'l Lab. Rels. Bd. v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018). The last two factors "merge" when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 534 (2009).

## I. Plaintiffs are unlikely to succeed on the merits.

Plaintiffs argue that West Virginia Code § 16–3–4 violates their right to free exercise of religion under the First Amendment, as the law provides a medical exemption to its vaccination requirement without providing a religious exemption. They are incorrect. Plaintiffs are unlikely to succeed on this sole claim, as the Fourth Circuit has already held the challenged provisions of West Virginia immunization law challenged here do not violate the Free Exercise Clause *even if strict scrutiny applied*. *See Workman v. Mingo Cnty. Bd. of Educ.*, 419 Fed. App. 348, 353 (4th Cir. 2011) (holding that West Virginia's "wish to prevent the spread of communicable diseases clearly constitutes a compelling interest") (unpublished).

The First Amendment, applicable to the states through the Fourteenth Amendment, "declares that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940); U.S. Const. amend. I. It "embraces two concepts": the "freedom to believe" and the "freedom to act."

*Cantwell*, 310 U.S. at 303. While the freedom to believe is "absolute," the freedom to act "cannot be." *Id*. at 304. As Justice Scalia explained for the Supreme Court, "the right of free exercise *does not* relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Employment Div. v. Smith*, 494 U.S. 872, 879 (1990) (citations omitted). Because *Employment Division v. Smith* remains good law, the law at issue in this case should be upheld under rational basis review. Although the parties dispute the standard of review that should be applied here, the Court need not decide which level of scrutiny to apply because W. Va. Code § 16–3–4 survives strict scrutiny for the same reasons it survives rational basis review.

Over a century ago, the Supreme Court in *Jacobson v. Massachusetts* rejected a Fourteenth Amendment challenge to Massachusetts's mandatory vaccination law. 197 U.S. 11, 12 (1905). While *Jacobson* did not address the First Amendment, which had not yet been applied to the states, the Supreme Court concluded that the law "did not invade[] any right secured by the Federal Constitution." *Jacobson*, 197 U.S. at 38. The Supreme Court later instructed that *Jacobson* "settled that it is within the police power of a state to provide for compulsory vaccination." *Zucht v. King*, 260 U.S. 174, 176 (1922). Thereafter, when the Supreme Court was called to decide if a child labor law violated the First Amendment in *Prince v. Massachusetts*, it considered the limitations of the rights of religion and parenthood, and explained that a parent could not "claim freedom from compulsory vaccination for the child more than for himself on religious grounds." 321 U.S. 158, 166 (1944) (citing *Jacobson*, 197 U.S. at 25). These cases remain good law, and only the Supreme Court itself may overturn them; it has not done so.

In this backdrop, federal courts have overwhelmingly rejected free exercise challenges to mandatory school vaccination laws. *See, e.g., Workman*, 419 Fed. App. at 353 (holding that district court did not err in granting summary judgment because West Virginia's mandatory vaccination program for school admission did not violate the Free Exercise Clause under strict scrutiny); *Whitlow v. Cal. Dep't of Educ.*, 203 F. Supp. 3d 1079, 1085–87 (S.D. Cal. 2016) (denying a motion for a preliminary injunction because the parents challenging a bill that repealed a religious exemption to the state's vaccination requirement for new school children were unlikely to succeed on the merits of their claim that the bill violated the Free Exercise Clause, among others); *W.D. v. Rockland Cnty.*, 521 F. Supp. 3d 358, 409–10 (S.D.N.Y. 2021) (granting the defendants' motion for summary judgment and finding as a matter of law that excluding vaccinated children from school during a measles outbreak did not violate the Free Exercise Clause).

To be sure, recent Supreme Court cases make clear that, when considering public health, "the Constitution cannot be put away and forgotten." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020). And although *Jacobson* and *Zucht* do not involve challenges under the Free Exercise Clause, the reasoning in these cases indicates that vaccination as a condition of school admission does not violate the Free Exercise clause because they are consonant with Supreme Court precedent holding that "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531, (1993); *see also Workman*, 419 Fed. App. at 353-54.

A court will sustain a "religiously neutral and generally applicable law [that] incidentally burdens free exercise rights" if it is "rationally related to a legitimate government interest." *Does

5

*1-6 v. Mills*, 16 F.4th 20, 29 (1st Cir. 2021) (affirming the denial of a preliminary injunction because petitioners were unlikely to succeed on the merits of their claim that Maine's mandatory vaccination law for healthcare workers, which did not offer a religious or philosophical exemption, violated the Free Exercise clause). Plaintiffs contend that Supreme Court cases from recent terms compel the conclusion that West Virginia Code § 16–3–4 is not "generally applicable" after *Fulton v. City of Philadelphia*, — U.S. —, 141 S. Ct. 1868, (2021) and *Tandon v. Newsom*, – U.S. —, 141 S. Ct. 1294 (2021). They are incorrect.

The challenged immunization law here is neutral. A law is neutral when it does not target religion or religious practices. *Fulton*, 141 S. Ct. at 1877 ("Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature."). By its terms, W. Va. Code § 16–3–4 does not target religion or "single out [religion] for especially harsh treatment." *Roman Catholic Diocese*, 141 S. Ct. 63. Instead, the law requires all students to receive common vaccinations, exempting those with medical exemptions. Plaintiffs have not advanced an argument that the law was motivated by any religious animus. As such, the law is neutral.

It is also generally applicable. A law is generally applicable when it does not selectively "impose burdens only on conduct motivated by religious belief." *Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 543. If a law "treat[s] any comparable secular activity more favorably than religious exercise," then it is not generally applicable. *Tandon*, 141 S. Ct. at 1296. Further, a law is not generally applicable if it "'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions,'" as compared to maintaining a general exemption based on objective criteria, *Fulton*, 141 S. Ct. at 1877 (quoting *Smith*, 494 U.S. at 884). In *Tandon*, the Supreme Court reasoned that "whether two activities are

6

comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue," noting that "[c]omparability is concerned with the risks various activities pose." 141 S. Ct. at 1296. Additionally, the Supreme Court held in *Smith* that a law criminalizing controlled substance possession was deemed generally applicable even though it contained an exception for substances prescribed for medical purposes. *Smith*, 494 U.S. at 874, 878-82.

West Virginia's interest in W. Va. Code § 16–3–4 is to protect the health and safety of West Virginia schoolchildren and the community. *See* W. Va. Code § 16–3–5. And medical exemptions *further* the state's interest in health and safety while religious exemptions *undercut* that same interest. In enacting W. Va. Code § 16–3–4, however, the Legislature identified that the purpose of this law is to protect community health and Plaintiffs make no showing that this interest is pretextual or somehow unwarranted.

Plaintiffs' reliance on *Tandon* does not lead to a different conclusion. In *Tandon*, the Supreme Court concluded that the petitioners were likely to succeed on their Free Exercise challenge to California's restrictions on the number of households that could gather for in-home religious worship. 141 S. Ct. at 1297–98. California did not impose similar restrictions on secular activities. *Id*. *Tandon*, however, did not involve a one-to-one comparison of the transmission risk posed by an individual worshiper and, for example, an individual grocery shopper, and instead looked at the risk of groups. *Id*. at 1297. While comparability is concerned with the risks various activities pose, here, when considering the risk of the group, religious exemptions and medical exemptions are not comparable. Further, medical exemptions are not comparable to religious exemptions when considering the "interest that justifies the regulation at issue." *Tandon*, 141 S. Ct. at 1296. The state has an undeniable interest in protecting the health of West Virginia's

7

schoolchildren. Medical exemptions further this interest by ensuring that children are not harmed by vaccines that are contraindicated. *See Does 1-6*, 16 F.4th at 31 (concluding that a medical exemption to a vaccine mandate for healthcare workers would not undermine Maine's interests in protecting the health of healthcare professionals, those who cannot be vaccinated, and of all Mainers because "providing healthcare workers with medically contraindicated vaccines would threaten the health of those workers and thus compromise both their own health and their ability to provide care").

West Virginia has chosen to protect the safety of schoolchildren by requiring all students who may be safely vaccinated to be vaccinated, and this same interest is not served by an overarching religious exemption that jeopardizes the community immunity.

Certainly, general applicability may be absent when a law provides "a mechanism for individualized exemptions," because it creates the risk that administrators will use their discretion to effectively create exemptions on a case-by-case basis, exempting individuals from complying with the law for secular reasons, but not religious reasons. *Smith*, 494 U.S. at 884 (citations omitted). In *Smith*, the Court considered an exemption that was granted for "good cause" as an example of such "individualized exception." 494 U.S. at 884. Similarly, in *Fulton*, a city official was able to create exemptions in his or her "own discretion," which was violative of the general applicability framework. *Fulton*, 141 S. Ct. at 1878–79.

West Virginia Code § 16–3–4(h) allows individuals to receive medical exemptions, but this categorical exemption is not a "mechanism for individualized exemptions." *Smith*, 494 U.S. at 884. The law, instead, provides for an objectively defined category of people to whom the vaccine requirement does not apply and requires a certificate from "a licensed physician stating that the physical condition of the child is such that immunization is contraindicated or there

8

exists a specific precaution to a particular vaccine." W. Va. Code § 16–3–4(h)(1). It must be emphasized: "[N]o case of the Supreme Court holds that a single objective exemption renders a rule not generally applicable." *Does 1-6*, 16 F.4th at 30. The existence of a medical exemption thus does not render the law not generally applicable.

      Finally, Plaintiffs argue that the West Virginia immunization requirement presents a "hybrid-rights situation" under *Smith*, which would forestall the application of rational basis review. It does not. In *Smith*, the Supreme Court noted that the neutral, general applicability framework may be inappropriate for certain "hybrid situation[s]" where a Free Exercise Clause challenge is brought "in conjunction with other constitutional protections," such as the rights of parents. 494 U.S. at 881-82. Plaintiffs maintain that they have established a "hybrid right" because their Free Exercise Clause challenge is brought in conjunction with their constitutionally protected parental rights claim, so the Court should apply strict scrutiny. However, that language is dicta, as several courts have recognized. *See Combs v. Homer–Center School Dist.*, 540 F.3d 231, 244–47 (3rd Cir. 2008) (concluding exception was dicta); *see also Leebaert v. Harrington*, 332 F.3d 134, 143 (2d Cir. 2003).

      West Virginia Code § 16–3–4 easily survives rational basis review. When a law is neutral and of generally applicability, "it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practice." *Fifth Ave. Presbyterian Church v. City of N.Y.*, 293 F.3d 570, 574 (2d Cir. 2002). Rational basis review requires only that the law be rationally related to a legitimate state interest, and as long as there is a rational basis for the Act, the law *must* be upheld. *See FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993). Plaintiffs "have the burden to negat[e] every conceivable basis which might support" the law. *Id.* at 315. They cannot satisfy that heavy burden here.

West Virginia plainly has a legitimate interest in protecting the public health of the community and its schoolchildren in particular. The State's interest is not only legitimate, but also compelling. *See also Workman*, 419 Fed. App. at 352. The statute is rationally related to this interest, where the number of religious exemptions sought has increased, impacting the safety of herd immunity. The decision to allow medical exemptions but not religious exemptions does not render the law irrational, as medical exemptions further the health of schoolchildren by not requiring the vaccination of children for whom vaccinations are contraindicated. Since Plaintiffs do not make a clear showing of evidence from which an inference can be drawn that the law lacks any legitimate purpose, West Virginia Code § 16–3–4 withstands rational basis review. And for the same reasons, the law is justified by a compelling government interest in the health and safety of schoolchildren and the community, and it is narrowly tailored to advance that interest by setting forth a specific process for obtaining medical exemptions. *See Workman*, 419 Fed. App. at 353 ("[West Virginia's] wish to prevent the spread of communicable diseases clearly constitutes a compelling interest").

Apart from the merits, Plaintiffs are unlikely to succeed with their claim because they cannot demonstrate standing, which is their burden. Standing requires actual or certainly impending injury in fact that is fairly traceable to an alleged illegal action, and which is likely to be redressed by a favorable court decision. Among other things, Plaintiffs fail to make a clear showing of actual or certainly impending injury.

**II.     Plaintiffs fail to make a clear showing of irreparable harm.**

The facts set forth by Plaintiffs do not clearly demonstrate an urgent, irreparable harm, for several reasons. First, Plaintiffs acknowledge that they have, for years, homeschooled their children or sent them to schools in Ohio. Second, Plaintiffs do not claim that their objections to

immunization are a product newly formed religious convictions, suggesting instead that these beliefs have been long held. Third, the statute they now challenge has been on the books since 1937 and has not been amended in approximately eight years. Despite their objections to immunizations—coupled with a desire to attend West Virginia schools—Plaintiffs waited until April 2023 to file this lawsuit demanding emergency judicial relief. Knowing they object to the immunization requirements but wishing to enroll their children in the 2023-24 school year, Plaintiffs could have challenged the statute sooner. But they didn't. Plaintiffs' bare demands and an "emergency" of their own creation cannot now serve as the basis for expedited, injunctive relief.

Even then, Plaintiffs have not yet (and will not for some time) be confronted with the decision to either vaccinate their children or forego attendance at their schools of choice. Plaintiffs do not suggest that they wish to enroll their children in West Virginia schools in the remaining weeks of the 2022-23 school years. And the 2023-24 school year does not begin until August 2023. This leaves more than sufficient time for this Court to resolve this dispute at a more considered pace. Because Plaintiffs have failed to identify an impending and irreparable harm requiring immediate resolution, their motion for preliminary injunctive relief and expedited consideration should be denied for this additional, independently sufficient reason.

**III.     The balance of the equities favors upholding state law.**

The equities also weigh strongly against Plaintiffs' motion for a preliminary injunction. Our nation's historic experience with polio, for example—and the essential importance of vaccinations to combat and practically eradicate that devastating disease—demonstrates the critical importance of a rigorous and careful system to halt the spread of communicable diseases in our communities, including our schools, through immunization. *See Workman v. Mingo Cnty.*

*Bd. of Educ.*, 419 Fed. App. 348, 353 (4th Cir. 2011) (holding that West Virginia's "wish to prevent the spread of communicable diseases clearly constitutes a compelling interest"). Not only has the Fourth Circuit recognized the compelling public interest supporting West Virginia's immunization laws, but the democratically elected lawmakers of our State—public representatives—have done so directly and emphatically: The "early immunization for preventable diseases represents one of the most cost-effective means of disease prevention," and "[i]mmunization of children at an early age serves as a preventive measure both in time and money and is essential to maintain our children's health and well-being." W. Va. Code § 16–3–5(a).

This Court should allow the challenged law to remain in effect while this case proceeds in the ordinary course.

## CONCLUSION

For these reasons, the motion should be denied. Alternatively, given the abbreviated timeframe before the hearing, the Court should defer the motion and permit Dr. Christiansen additional time and leave to supplement the record to ensure all issues are fully and fairly presented.

**DR. MATTHEW CHRISTIANSEN**

By Counsel:

/s/ *Michael B. Hissam*
Michael B. Hissam (WVSB #11526)
J. Zak Ritchie (WVSB #11705)
Andrew C. Robey (WVSB #12806)
*Special Assistant Attorneys General*
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056

mhissam@hfdrlaw.com
zritchie@hfdrlaw.com
arobey@hfdrlaw.com

Steven R. Compton (WVSB #6562)
Deputy Attorney General
West Virginia Attorney General's Office
812 Quarrier Street, 6th Floor
Charleston, WV 25301
Telephone: 304-558-2131
Fax: 304-558-0430

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on May 9, 2023, a copy of the foregoing was served upon all parties of record via ECF notification.

/s/ *Michael B. Hissam*
Michael B. Hissam (WVSB # 11526)