**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

| | | |
|---|---|---|
| WEST VIRGINIA PARENTS FOR RELIGIOUS FREEDOM, et. al., | : | Civil Action No.: 5:23-cv-00158-JPB |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DR. MATTHEW CHRISTIANSEN, | : | |
| | : | |
| Defendant | | |

**<u>PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION</u>**

Plaintiffs provide this Reply to Defendant Christiansen's Response (Dkt. 35) and the *Pullman* issue raised orally by Defendant at the May 10, 2023 hearing. Plaintiffs note that it will likely take time for Defendant, if so ordered, to implement a process for religious exemptions and the enrollment deadline for public schools is June 30, 2023, with late enrollees often being locked out of desired courses and activities, and private schools have first-come-first-serve enrollment. Many Plaintiffs, due to their religious beliefs, prefer private religious schools. Plaintiffs therefore respectfully pray that if the Court is inclined to grant a preliminary injunction, it occur with sufficient time for Defendant to create a religious exemption process by June 30, 2023.[1]

**I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS**

Defendant begins by arguing that *Workman v. Mingo Cnty. Bd. of Educ*, 419 Fed. Appx. 348 (4th Cir. 2021) forecloses Plaintiffs' claims. That unpublished decision is not binding precedent. *See Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 338 (4th Cir. 2009). *Workman* upheld the law under rational basis review, but suggested in dicta that it met strict scrutiny. More significantly, that decision does not address the existence of discretionary medical

---

[1] Plaintiffs initially proposed July 15, 2023 believing that was the deadline for public school enrollment.

exemptions in W.V. Code § 16-3-4(h), nor does it address the recent Supreme Court cases *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) and *Tandon v. Newsom*, 141 S. Ct. 1294 (2021).

Defendant likewise argues that *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) compels the conclusion that the statute here is valid. *Jacobson* predated modern incorporation doctrine, as the Free Exercise Clause did not even apply to the states until 1940. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Even so, *Jacobson* was clear that the Constitution trumps local police power enactments, even on the subject of vaccination, indicating such enactments "must yield" to federal constitutional protections. *Id.* at 25. *See also Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 70 (2020) (concurrence by Justices Gorsuch and Kavanaugh explaining the limitations of *Jacobson*). *Zucht v. King*, 260 U.S. 174, 176 (1922) suffers the same flaws. And Defendant's citation to *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) is equally inapposite because it addresses a neutral and generally applicable statute concerning a child work requirement (the discussion of vaccination was mere *dicta*).

**A.  *The Challenged Law Is Not Generally Applicable and Strict Scrutiny Is Triggered***

Recognizing that if the law in question is not neutral or generally applicable it fails, Defendant suggests that it is both. It is not. Let's start with the plain language in W.V. Code § 16-3-4 (the "**Compulsory Vaccination Law**"): "The commissioner **is authorized** to grant, renew, condition, deny, suspend or revoke exemptions to the compulsory immunization requirements of this section, on a statewide basis, upon sufficient medical evidence that immunization is contraindicated or there exists a specific precaution to a particular vaccine." (Emphasis added.)

That language confers the discretion to issue exemptions for medical reasons but does not guarantee them. It "invite[s]" the government to consider the particular reasons for a person's conduct by providing "'a mechanism for individualized exemptions.'" *Fulton*, 141 S.Ct. at 1877, *quoting Employment Division v. Smith*, 494 U.S. 872, 884 (1990). These exemptions are not

2

automatic and must instead survive a review and individualized consideration. *See* W.V. Code § 16-3-4(h); Dkt. 4-1 (Medical Exemption Form); Dkt. 4-2 (Request for Review). Thus, "the inclusion of a formal system of entirely discretionary exceptions [] renders the … requirement not generally applicable." *Fulton*, 141 S.Ct. at 1878.

Defendant suggests that the criteria for a medical exemption is objective, but that is simply not the case. Even if someone had a condition that is "contraindicated" or a "specific precaution" (which are subjective), this still does not guarantee the issuance of an exemption: the commissioner is merely authorized to issue an exemption, he is not required to do so. Thus, Defendant "may not refuse to extend that [exemption] system to cases of 'religious hardship' without compelling reason." *Fulton*, 141 S.Ct. at 1878, *quoting Smith*, 494 U.S. at 884.

Whether two activities are comparable for purposes of the free exercise clause depends on "the asserted government interest that justifies the regulation at issue." *Tandon*, 141 S. Ct. at 1296. The governmental interest proffered by Defendant here is "to protect community health." (Dkt. 35 at 7). But, where First Amendment violations are at issue, Courts cannot rely on "broadly formulated" interests, but instead must "'scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants." *Gonzales v. O Centro Espirita*, 546 U.S. 418, 431 (2006). Accordingly, the question in this case "is not whether the [Government] has a compelling interest [to protect community health], but whether it has such an interest in denying an exception" to an individual plaintiff specifically. *Fulton*, 141 S. Ct. at 1881. Defendant's memoranda is bereft of any discussion of its interest in specifically denying Plaintiffs the exemptions they seek.

Defendant posits that medical exemptions are not comparable to religious exemptions. He suggests that the state has an "interest in protecting the health of West Virginia's schoolchildren." (Dkt. 35 at 7-8). He also claims that medical exemptions further this interest by ensuring that

3

children are not harmed by vaccines that are contraindicated, *citing Doe v. Mills*, 16 F.4th 20 (1st Cir. 2021). *Doe*, which involved health care workers, is easily distinguishable. First, and rendering *Doe* entirely inapplicable: the medical exemption there was automatic. *Id.* at 34 ("Maine's emergency rule does not allow any government official discretion to consider the merits of an individual's request for an exemption.") Here, W.V. Code § 16-3-4(h) is discretionary. Second, a child with a medical exemption presents the same exact purported risk to public health, in terms of potential to spread disease, as a child with a religious exemption. Hence, Defendant misses the point: as the interest he asserts is *public* health, as it must be, the purported risk from an unvaccinated child remains the same *to others*, regardless of the reason the child is unvaccinated.

In terms of *Doe*, other circuit courts have determined that the existence of a medical exemption *requires* the offering of a religious exemption. *See Doster v. Kendall*, 54 F. 4th 398, 423 (6th Cir. 2022); *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 352 (5th Cir. 2022); *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728 (6th Cir. 2021).

It bears noting that where the government permits secular exemptions to a policy seeking to curtail the spread of a disease, it is the burden of the government to "show that the religious exercise at issue is more dangerous" than the secular activity the government permits. *Tandon*, 141 S. Ct. at 1297. Defendant can never make this showing here because a child possessing a medical exemption poses the same purported risk as would a child with a religious exemption.

Equally, the argument that "there may be a few more religious exemptions than medical exemptions and so that makes the two exemptions different" is wrong. That is because "the Government does not have a compelling interest in each marginal percentage point by which its goals are advanced." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 803 n.9 (2011). At bottom, this argument is but another formulation of the "classic rejoinder of bureaucrats throughout history:

4

If I make an exception for you, I'll have to make one for everybody, so no exceptions." *Holt v. Hobbs*, 574 U.S. 352, 368 (2015), *quoting O Centro*, 546 U.S. at 436.

Defendant suggests the hybrid rights discussion in *Smith* is dicta. (Dkt. 35 at 9). Yet many courts have found such claims viable. *See, e.g., Archdiocese of Washington v. WMATA*, 897 F. 3d 314, 331 (D.C. Cir. 2018); *Brown v. Hot, Sexy and Safer Productions*, 68 F. 3d 525, 539 (1st Cir. 1995); *Cornerstone Christian Schools v. University Interscholastic League*, 563 F. 3d 127, 136, n. 8 (5th Cir. 2009); *San Jose Christian College v. Morgan Hill*, 360 F. 3d 1024, 1032 (9th Cir. 2004).

Defendant also fails to rebut that "several of the vaccines required by the Compulsory Vaccination Law do not prevent infection and transmission of the pathogen they protect against; they only provide an undefined level of personal protection." (Dkt. 1 ¶ 76; Dkt. 5 ¶ 22 at fn. 13).[2]

The bottom line is that the law is not neutral nor generally applicable and so the appropriate standard of review is strict scrutiny.

---

[2] At least four of the six vaccines mandated for school in West Virginia only, at best, offer personal protection (like Covid-19 vaccines). *See, e.g.,* CDC, https://www.cdc.gov/vaccines/pubs/pinkbook/tetanus.html ("Tetanus is not contagious from person to person."); CDC Study, https://pubmed.ncbi.nlm.nih.gov/5026197/ ("Diphtheria toxoid … does not prevent the carrier state nor stop the spread of infection" because it only creates antibodies to a toxin released by this bacteria, not to any antibodies to the diphtheria bacteria itself.); World Association of Infectious Diseases, https://pubmed.ncbi.nlm.nih.gov/31333640/ ("aPVs [pertussis vaccine] … cannot avoid infection and transmission. … aPV pertussis vaccines do not prevent colonization. Consequently, they do not reduce the circulation of B. pertussis and do not exert any herd immunity effect."); CDC et al., https://polioeradication.org/polio-today/polio-prevention/the-vaccines/ipv/ (Inactivated Polio Vaccine, IPV, is the only polio vaccine used in the U.S. for over two decades and "IPV induces very low levels of immunity in the intestine. As a result, when a person immunized with IPV is infected with wild poliovirus [which spreads by fecal-to-oral contamination], the virus can still multiply inside the intestines and be shed in the feces … IPV does not stop transmission of the virus."); CDC, https://www.cdc.gov/vaccines/vpd/mening/public/index.html ("data suggest MenACWY vaccines have provided protection to those vaccinated, but probably not to the larger, unvaccinated community (population or herd immunity)"); CDC, https://t.ly/RNW- (CDC confirming it does not have a documented case of Hepatitis B being transmitted in a school setting). Courts may take judicial notice of information contained in official government documents and websites under FRE Rule 201. *See, e.g., United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

### B. *The Law Does Not Survive Strict Scrutiny Review*

Defendant suggests that the law meets strict scrutiny, but he barely develops that argument. (Dkt. 35 at 10). Given the existence of medical exemptions, the argument exists that there is no compelling governmental interest at all. *Doster v. Kendall*, 54 F. 4th 398, 423 (6th Cir. 2022); *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 352 (5th Cir. 2022); *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 542-546 (1993). Defendant "must do more than assert that certain risk factors" are present in not vaccinating children. *See Tandon*, 141 S. Ct. at 1296. Instead, "narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of [disease]." *Tandon*, 141 S. Ct. 1294, 1296-1297. "Where the government permits [attendance at school with medical exemptions], it must show that the religious exercise at issue is more dangerous …" *Id.* Despite the burden being on him (and putting aside that children excluded from school do not simply evaporate), Defendant does not make this demonstration and proffers no evidence that a few hundred[3] religious exemptions across the state substantially undermine any asserted state interest.

As it turns out, there are a variety of least restrictive measures that Defendant has not pursued, including (1) providing a religious exemption as every other state that surrounds West Virginia does (Ohio Code 3313.671, Ky. Rev. Stat. 214.066; Pa. Code § 23.84; Va. Code § 22.1-271.2); and/or (2) excluding unvaccinated children from school in the event of an outbreak, as neighboring states do; and/or (3) working to lower the rate of non-compliant students, estimated at 3.5% of children in West Virginia schools,[4] whose parents do not have religious objections to vaccines but are not up to date on mandated vaccines (which is far higher than the anticipated

---

[3] Kentucky, with four times West Virginia's population, had 421 kindergartners with religious exemptions in the 2020-2021 school year. *See* https://www.chfs.ky.gov/agencies/dph/dehp/imm/2021Annual SchoolSurveyReport.pdf (last accessed 5/12/2023). West Virginia can anticipate a far smaller number.
[4] https://www.cdc.gov/mmwr/volumes/72/wr/mm7202a2.htm (last accessed 5/12/2023).

number of children seeking to attend with a religious exemption); and/or (4) using persuasion, not coercion, as is done in the 44 states with a religious exemptions, 15 of which also have a philosophical exemption, to maintain high vaccination rates.

There is an under-inclusivity problem with the stated government interest as well: West Virginia permits children to otherwise be in the community, including to participate in extracurricular activities – the children who are excluded from school **do not evaporate or disappear**. West Virginia also does not require children or adults to provide proof of vaccination for virtually any activity outside of school enrollment, including entering any church, store, library, restaurant, or playground, or to participate in competitive recreational sports leagues, daily homeschool classroom co-ops, or any other group children's activities, in which Plaintiffs' children routinely participate. Plaintiff Uhl's children, for example, are with other children in group settings of twenty or more children most days of the year, including during regular school hours, despite being "homeschooled." Yet, West Virginia law does not require those who homeschool to vaccinate and does not prohibit parents from enrolling their children in border state schools, as Plaintiff Pastor Figaretti has done. Finally, unvaccinated adults are permitted to be in school buildings, further undermining the asserted governmental interest.

Even worse, West Virginia has left unaddressed significant non-compliance with the vaccine mandate, 3.5% of West Virginia school children (*see* fn. 4), which is a far higher percentage by multiple factors than the anticipated percentage of potential religious exemptions.

Finally, as Plaintiffs' evidence has shown, the existence of the Compulsory Vaccination Law is not causing and will not cause them to vaccinate their children.

### C.  *The Remaining Injunction Factors Are Met*

The remaining injunction factors, balance of harms and public interest, merge where there is a loss of constitutional rights. *See Tandon*, 141 S.Ct. at 1297; *Nken v. Holder*, 556 U.S. 418, 435

(2009); *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 190-191 (4th Cir. 2013); *Legend Night Club v. Miller*, 637 F.3d 291, 302-03 (4th Cir. 2011); *Newson v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 254-255, 261 (4th Cir. 2003).

Defendant suggests that because Plaintiffs' rights have been infringed upon for a period of time, Defendants should be permitted to continue to do so. That position is unsupportable as a matter of law. The Fourth Circuit, for instance, has upheld the issuance of an injunction against ongoing sex discrimination even though the policy had been in place for over a hundred years. *See Faulkner v. Jones*, 10 F.3d 226 (4th Cir. 1993). Moreover, Plaintiffs have pursued legislation for over a decade on this issue and when that failed again in 2023, they instituted this litigation.

Defendant also suggests that the public interest weighs in his favor because disease might spread, but other than rank conjecture and hyperbole, he fails to articulate how a few hundred exemptions, spread throughout the state, could actually cause this. He also assumes these children merely evaporate if excluded from school. They don't. Excluding them just harms them and, in any event, most mandated vaccines do not prevent transmission, *supra* at fn. 2.

In sum, Plaintiffs have a likelihood of success that their First Amendment rights have been violated absent a religious exemption to the Compulsory Vaccination Law. Even the Attorney General of West Virginia, charged with defending the constitutionality of West Virginia laws, agrees this law violates the First Amendment absent inclusion of a religious exemption. (Dkt. 28).

## II.  PLAINTIFFS HAVE STANDING

Defendant barely addresses standing, (Dkt. 35 at 10), but suggests that Plaintiffs lack it nevertheless. The individual Plaintiffs attested, and Defendant did not dispute: that they have sincerely held religious beliefs that are substantially burdened by the Compulsory Vaccination Law; that they suffered, and continue to suffer, coercion and various burdens; and that obtaining an injunction would redress their injury. (Dkt. 1 ¶¶ 2, 23-66). This is sufficient for standing.

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Carter v. Fleming*, 879 F.3d 132, 138-140 (4th Cir. 2018). The verified complaint makes clear that the organizational Plaintiff also has standing. (Dkt. 1 ¶¶ 20-22); *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *Virginia Hosp. Ass'n v. Baliles*, 868 F.2d 653, 662 (4th Cir. 1989).

## III.   *PULLMAN* ABSTENTION IS NOT APPROPRIATE

Defendant requested that the Court, presumably *sua sponte*, abstain under *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941) from adjudicating the clear ongoing violation of Plaintiffs' First Amendment rights – the sole claim in their complaint – and send them to state court under a statute they never pled, the West Virginia Equal Protection for Religion Act, W. Va. Code §35-1A-1 (the "**EPRA**"). The Court should decline this invitation because the challenged law is unambiguous, it is clearly unconstitutional as applied to Plaintiffs, and the Supreme Court has been clear that it is improper to require exhaustion of state claims for the pursuit of federal constitutional claims.

### A.   *Pullman Inapplicable Because the Compulsory Vaccination Law is Unambiguous*

While "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided," *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984), it is well settled that "*Pullman* does not command district courts to abstain simply to permit state review of an unambiguous statute." *City of Houston v. Hill*, 482 U.S. 451, 469 (1987).

Here, the only statute at issue, the Compulsory Vaccination Law, is unambiguous. It expressly and unambiguously requires excluding from school a child without mandated vaccines absent a medical exemption. This law has been interpreted for decades by West Virginia to prohibit religious exemptions, the Defendant's website makes clear it will not accept religious exemptions, and no West Virginia state court has found otherwise.

While that alone renders *Pullman* inappropriate, the Supreme Court has made clear that *Pullman* abstention is particularly inappropriate where, as here, a statute is challenged on its face as violating the First Amendment. *City of Houston*, 482 U.S. at 467-68 (Holding abstention was inappropriate in a First Amendment challenge because the challenged ordinance was unambiguous on its face, explaining "Abstention is, of course, the exception and not the rule, and we have been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment. We have held that abstention . . . is inappropriate for cases [where] . . . statutes are justifiably attacked on their face as abridging free expression. In such case[s] to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect.")

Nonetheless, Defendant argues that the Court should ignore the Compulsory Vaccination Law's clear and unambiguous language because of the existence of a separate statute, with separate rights, unrelated to this law and not yet in effect when Plaintiffs filed this action nor currently in effect: EPRA.[5] But Plaintiffs neither invoke nor challenge EPRA as it is not the statute that is currently being relied upon by Defendant to exclude their children from school due to their religious beliefs. Defendant has not made any pronouncements that EPRA permits or will permit Plaintiffs' children to attend school with a religious exemption.

Accordingly, the only question before this Court is whether the Compulsory Vaccination Law, on its face, and as it currently exists and is being implemented, violates the First Amendment. This Court is uniquely qualified to resolve this question, which is purely a matter of interpreting the United States Constitution. Because the Compulsory Vaccination Law unambiguously prohibits Plaintiffs' children from attending school despite their parents' sincerely held religious

---

[5] EPRA does not go into effect until May 29, 2023.

beliefs, there is nothing ambiguous about the plain meaning of the Compulsory Vaccination Law for a state court to first resolve before this Court can adjudicate whether, on its face, it violates Plaintiffs' free exercise rights under the First Amendment. *Wohl v. Keene*, 476 F.2d 171, 174 (4th Cir. 1973) (abstention improper where there is nothing ambiguous about the challenged statute).

In a nearly identical matter, where Mississippi's school compulsory vaccination statue was challenged in federal court due to its lack of a religious exemption process and the Attorney General of Mississippi sought to invoke *Pullman* abstention due to Mississippi's EPRA-equivalent statute, the court there explained that the Mississippi Religious Freedom Restoration Act did not render the challenged vaccination statute vague, that the compulsory vaccination statute was unambiguous, and therefore *Pullman* was inapplicable. *Bosarge et al. v. Edney.*, No. 1:22-cv-00233-HSO-BWR, Dkt. 65 at 15-18 (S.D. Miss. Mar. 9, 2023). So too here.

### B. *Pullman* Improper Because the Challenged Statute is Clearly Unconstitutional

*Pullman* abstention is also improper where a law is clearly unconstitutional. *See Thornburgh v. American College of Obstetricians*, 476 U.S. 747, 756 (1986); *Babbitt v. United Farm Workers Nat'l.*, 442 U.S. 289, 305-12 (1979). Federal courts need not defer to state courts and delay adjudication of a state law that plainly violates the Constitution. *See, e.g.*, *City of Houston*, 482 U.S. at 467-68; *Harman v. Forsennius*, 380 U.S. 528, 535 (1965). And as discussed, the law at issue plainly violates the First Amendment.

The improper use of *Pullman* abstention to create costs and delays, which only prolong and further exacerbate the underlying constitutional harm, was observed almost immediately after its inception. *See Abstention Doctrine Today,* 125 U. Pa. L. Rev. 590, 602 (1977) (Discussing "whether delay is not sometimes the *aim* of the abstention procedure, and the desirability of obtaining a clarifying state decision [is] simply the *excuse* for the delay."); *Fitts v. Kolb,* 779 F.

11

Supp. 1502, 1504 (D.S.C. 1991) ("The United States Supreme Court has also recognized in several cases that a federal court should be particularly hesitant in abstaining in cases involving First Amendment violations…[e]ven in situations where the traditional criteria for *Pullman* abstention have been met … [because] delay might significantly undermine fundamental constitutional guarantees. Delay may be particularly harmful in cases which involve a first amendment challenge, since the longer the delay in obtaining a final decision on the constitutional question the greater the chill on the exercise of the first amendment right that may result.").[6]

Here, sending Plaintiffs into the state court system on a claim they never asserted and do not intend to assert, pursuant to a statute that is not even in effect, and that Defendant has never even claimed requires a religious exemption, when Plaintiff's First Amendment Free Exercise rights are clearly and plainly being violated, reflects a use of *Pullman* that various courts and other judicial scholars have warned against. *See, e.g., England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 425 (1964) ("Some litigants have long purses. Many, however, can hardly afford one lawsuit, let alone two. Shuttling the parties between state and federal tribunals is a sure way of defeating the ends of justice . . .  The parties are entitled … to adjudication of their rights in the tribunals which Congress has empowered to act.") (Douglas, J., concurring)).

Even the Attorney General of West Virginia, charged with defending the constitutionality of West Virginia laws, agrees that Plaintiffs' First Amendment free exercise rights have been violated by the lack of a religious exemption in the Compulsory Vaccination Law. (Dkt. 28).

---

[6] During the hearing, Defendant pointed to *Sonda v. Oil*, No. 5:22-CV-124, 2022 U.S. Dist. LEXIS 230069, at *7 (N.D. W. Va. Dec. 1, 2022), but this case is easily distinguished as it did not involve a First Amendment violation and, as discussed, the Supreme Court has repeatedly made clear the inappropriateness of invoking *Pullman* in First Amendment cases. Moreover, unlike in *Sonda* where plaintiffs alleged state constitutional claims, Plaintiffs here did not plead any claim, including EPRA, under state law.

Thus, *Pullman* abstention is also inapplicable because the Compulsory Vaccination Law plainly violates the First Amendment.

### C.  Improper To Create a State Court Exhaustion Requirement for 1983 Claims

*Pullman* abstention should also not be invoked here because it would improperly create a state court exhaustion requirement in West Virginia to *any* claim under 42 U.S.C. § 1983 for violation of free exercise under the First Amendment. *See Steffel v. Thompson,* 415 U.S. 452, 472-73 (1974)) ("when federal claims are premised on 42 U.S.C. § 1983 . . . we have not required exhaustion of state judicial . . . remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights"); *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019) ("[T]he settled rule is that exhaustion of state remedies is *not* a prerequisite to an action under [42 U. S. C.] §1983.") (internal citations omitted).

The Supreme Court has made clear it abhors state laws or schemes that seek to insulate the state from the reach of 42 U.S.C. § 1983. *Id*.; *Haywood v. Drown*, 556 U.S. 729 (2009) (a state "may not shut the courthouse door to federal claims that it considers at odds with its local policy").

Application of *Pullman* here would improperly create a judicial requirement that every Free Exercise claim brought in federal court challenging a state law must first be adjudicated in state court under EPRA. This should not be countenanced. This creates delay in obtaining relief and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Moreover, the Supreme Court cautioned against Defendant's suggested approach because it "would convert abstention from the exception into the general rule," which would then effectively nullify the ability for West Virginia federal court to adjudicate First Amendment free exercise claims. *Examining Board of Engineers, Architects and Surveyors v. Otero,* 426 U.S. 572,

13

598 (1976); *see also Wisconsin v. Constantineau,* 400 U.S. 433 (1971); *Stultz v. VA* DMV, 185 F. Supp.3d 890 (W.D. VA. 2015) ("abstention from the exercise of federal jurisdiction is the exception, not the rule.") (citing *Colorado River Water Conservation Dist. V. United States*, 424 U.S. 800, 813 (1976). The danger of converting abstention into the general rule is even more concerning in that it would "force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings [which] might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Zwickler*, 389 U.S. 241, 252 (1967).

The Court should decline the opportunity to make EPRA an exhaustion requirement for any First Amendment claim in West Virginia.

## CONCLUSION

For these reasons and for the reasons described in Plaintiffs' Memorandum in Support of Their Motion for Preliminary Injunction (Dkt. 5), Plaintiffs respectfully request that preliminary injunctive relief be granted and with sufficient time for Defendant to create a religious exemption process by June 30, 2023.

Dated: May 12, 2023                     Respectfully submitted,

JOHN H. BRYAN LAW                       SIRI & GLIMSTAD LLP

 /s/ *John H. Bryan*                    /s/ *Aaron Siri*
John H. Bryan, Attorney                 Aaron Siri, Esq. (admitted PHV)
West Virginia Bar No. 102159            Elizabeth A. Brehm, Esq. (admitted PHV)
411 Main Street                         Walker D. Moller (admitted PHV)
P.O. Box 366                            Suzanne Heywood (admitted PHV)
Union, West Virginia 24983              745 Fifth Ave, Suite 500
Tel: (304) 772-4999                     New York, NY 10151
Fax: (304) 772-4998                     Tel: (212) 532-1091
jhb@johnbryanlaw.com                    Fax: (646) 417-5967
                                        aaron@sirillp.com
                                        ebrehm@sirillp.com
                                        wmoller@sirillp.com
                                        sheywood@sirillp.com

Christopher Wiest (admitted PHV)
25 Town Center Blvd., Suite 104
Crestview, KY 41017
Tel: (513) 257-1895
Fax: (859) 495-0803
chris@cwiestlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2023, a true and correct copy of the foregoing was served

by CM/ECF on all counsel or parties of record.

/s/ *John H. Bryan*_____