# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

| | | |
|---|---|---|
| WEST VIRGINIA PARENTS FOR RELIGIOUS FREEDOM, et. al., | : | Civil Action No.: 5:23-cv-00158-JPB |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| DR. MATTHEW CHRISTIANSEN, | : | |
| Defendant | : | |

**PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS**

COMES NOW Plaintiffs West Virginia Parents for Religious Freedom, Pastor Chris Figaretti, and Judd Uhl, by and through their undersigned counsel. In support of their Motion, Plaintiffs state the following uncontroverted facts:

1. Plaintiff Figaretti and Plaintiff Uhl are both members of Plaintiff West Virginia Parents for Religious Freedom ("**PRF**").

2. PRF is a West Virginia, statewide, non-profit organization, established under West Virginia law and comprised of parents and other citizens whose purpose is to seek and/or obtain, either through legislative change, or litigation, the establishment of a religious exemption process to vaccination requirements for schools and daycares, or the recognition by law of such exemptions. *See* Dkt. 1 at ¶ 20-22.

3. Both Figaretti and Uhl possess deeply held religious beliefs that prohibit them from vaccinating their children. *See* Dkt. 1 at ¶¶ 25-30, 41-45, & 60-61; Figaretti Decl. at ¶¶ 9-11; Uhl Decl. at ¶¶ 10-17.

4. Plaintiffs' religious convictions are substantially burdened by the Compulsory Vaccination Law. *See* Dkt. 1 at ¶¶ 3, 107; Figaretti Decl., generally; Uhl Decl., generally.

5. PRF represents approximately a hundred fifty parents who have sincere religious beliefs against vaccinating their children and have been harmed by West Virginia's Compulsory Vaccination Law. *See* Figaretti Decl. at ¶ 22. The parents either homeschool their children or send them to school out of state. *Id.* Both Uhl and Figaretti are members of PRF. *Id.* at ¶ 23. These families are located throughout the state of West Virginia. *Id.* Anyone in West Virginia can join the organization. *Id.* at ¶ 21.

6. PRF's members have been harmed by the Compulsory Vaccination Law and its lack of a religious exemption. *Id.* at ¶¶ 22, 24. PRF itself has incurred harm from the Compulsory Vaccination Law, namely the need to spend resources, time, and money, to fight for a religious exemption to the Compulsory Vaccination Law. *Id.* at ¶24.

7. Each individual Plaintiff maintains objections to the practice of abortion and views childhood vaccinations as irredeemably connected to abortion due to their sincerely held religious beliefs. *See* Dkt. 1 at ¶¶ 25-30, 41-45; Figaretti Decl. at ¶ 9; Uhl Decl. at ¶¶ 12-15. The individual Plaintiffs also harbor objections due to their sincerely held religious beliefs because they believe that the body is a temple of the Holy Spirit, and that vaccines tamper with God's design. *See* Dkt. 1 at ¶¶ 25-30, 41-45*;* Figaretti Decl. at ¶ 10; Uhl Decl. at ¶¶ 10, 16.

8. There is significant evidence that existing and required vaccines have ties to aborted fetal tissue and cell lines, substantiating Plaintiffs' religious beliefs. *See* Siri Decl. ¶¶ 2-6.

9. Many required vaccines also contain genetic and cellular material derived from aborted fetuses – materials that would be injected directly into Plaintiffs' children's bodies if they were to comply with West Virginia's mandatory vaccination requirements. *See* Siri Decl. ¶¶ 4-6.

10. West Virginia's compulsory school attendance law requires children between the ages of 6 and 17 to be enrolled in an education program, *see* W. VA. CODE § 18-8-1a, and the parents are subjected to potential criminal prosecution if he/she fails to educate their children. *Id.* at § 18-8-2.

11. Plaintiffs' children are categorically excluded from West Virginia's educational system, yet they are legally required to educate their children. *See* Dkt. 1 at ¶ 5.

12. Plaintiffs Uhl and Figaretti each attempted to enroll their children in West Virginia schools with a religious exemption and were each rejected due to the children's vaccination status. *See* Dkt. 1 at ¶¶ 34-36, 49-52; Figaretti Decl. at ¶ 12; Uhl Decl. at ¶ 26.

13. Because of his religious objections to mandatory vaccination, Figaretti's children cross state lines each morning to attend school in Ohio, one of the forty-four states that permit religious exemptions to childhood vaccination requirements. *See* Dkt. 1 at ¶¶ 31-32; Figaretti Decl. at ¶12. Figaretti's family has made this commute for years, an endeavor that has entailed significant additional expenses and lost time. *See* Dkt. 1 at ¶ 32; Figaretti Decl. at ¶¶ 12-15.

14. Plaintiff Uhl has been forced to homeschool his children as it is the only educational option in West Virginia available to his family. *See* Dkt. 1 at ¶¶ 46-47; Uhl Decl. at ¶¶ 20-21.

15. Plaintiffs' children have been barred from West Virginia's educational system because of their families' religious beliefs. *See* Figaretti Decl. at ¶¶ 8-17; Uhl Decl. at ¶¶ 18-22, 26.

16. Plaintiffs' children are unable to access the practical and social benefits of a typical education that their secular peers enjoy. *Id.*

17. The Compulsory Vaccination Law does not cause the Plaintiffs' children to disappear from West Virginia. *See* Figaretti Decl. at ¶ 16; Uhl Decl. at ¶¶ 33-40. These children

are active members of their communities, routinely participating in sports, on youth church grounds, gathering and socializing with friends, and more, spending more days of the year than not socializing in group settings with other West Virginia children, and typically children in public or private school in West Virginia. *Id.* They are not prohibited from doing so by West Virginia law, yet they cannot attend school with these same children.

18. While the State permits medical exemptions to its vaccination requirements, religious exemptions are not permitted. *See* Dkt. 1 at ¶¶ 6-10.

19. The state offers a medical exemption form, that delegates to private health care providers discretion to determine the variety of circumstances which are eligible for a medical exemption, and those which are not. *See* Siri Decl. at ¶ 7. Acting on behalf of the state, these physicians are tasked with conducting an individualized assessment of each request for a medical exemption and have latitude to decide whether to certify the request. *See* Dkt. 1 at ¶¶ 96-97.

20. If a medical exemption form is signed by a physician, it is then forwarded to the state's Immunization Officer for personalized review. If the exemption is approved, that student is permitted to attend school without having received all of the mandated vaccines. *Id.* at 98.

21. If the Immunization Officer denies the medical exemption, the decision can be appealed to the State Health Officer, who reviews the appeal on a case-by-case basis and determines whether to uphold or reverse the State Immunization Officer's decision. *See* W. VA. CODE § 16-3-4 (h)(4); Siri Decl. at ¶ 8.

22. Plaintiff Figaretti called the West Virginia Department of Health and requested that he be able to submit a religious exemption for his child. Health Department officials stated they would not accept his religious exemption request but explained that he could pursue a medical exemption. *See* Dkt. 1 at ¶ 100.

23. Forty-four states have legislation allowing school-age children to be exempt from mandatory vaccination laws for religious reasons,[1] and one other state was recently enjoined by a federal court to provide a religious exemption for the upcoming school year. *See* Dkt. 1 at ¶ 135.

24. States that have religious exemptions to school vaccination requirements include every state that borders West Virginia. *See* Ohio Code 3313.671, Ky. Rev. Stat. 214.036; Pa. Code §23.84; Va. Code §22.1-271.2; Md. Code Regs. 10.06.04.05.

25. Kentucky has a religious exemption to vaccination, and according to the CDC 1.3 percent of kindergarteners in Kentucky had a religious *or* medical exemptions to one or more required vaccines for the 2020-21 school year, amounting to .18% of the total population of the state.[2]

26. The medical and religious exemption rates for children entering kindergarten are similar in the surrounding states of Virginia and Maryland, and Ohio and Pennsylvania which both have significant Amish populations with religious beliefs against vaccination, all four of which also have a religious exemption; those exemption rates amount to less than one percent of the total population of each of these four states.[3]

---

[1] *See* NATIONAL CONFERENCE OF STATE LEGISLATURES, *States with Religious and Philosophical Exemptions from School Immunization Requirements,* https://www.ncsl.org/health/states-with-religious-and-philosophical-exemptions-from-school-immunization-requirements (last visited May 26, 2023).

[2] *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *Vaccination Coverage and Selected Vaccines and Exemption Rates Among Children in Kindergarten – United States, 2021-22 School Year*, https://www.cdc.gov/mmwr/volumes/72/wr/mm7202a2.htm (detailing percentages of religious and medical exemption rates combined for U.S. kindergarteners in all 50 states and territories for the 2021-22 school year) (last visited May 26, 2023); U.S. CENSUS BUREAU, *QuickFacts Kentucky,* https://www.census.gov/quickfacts/ (providing total population of each state) (last visited May 30, 2023); https://nces.ed.gov/programs/digest/d22/tables/dt22_203.20.asp (providing enrollment in public elementary and secondary schools by state) (last visited May 30, 2023).

[3] *Id.*

27. Surrounding states deal with an outbreak, if one were to ever occur, by permitting the health department to exclude unvaccinated children (those with both medical and religious exemptions) from school for a limited time, which is significantly less restrictive than prohibiting them from attending school altogether.

Dated: May 31, 2023                                            Respectfully submitted,

JOHN H. BRYAN LAW                                              SIRI & GLIMSTAD LLP

 /s/ *John H. Bryan*                                           */s/ Aaron Siri*
John H. Bryan, Attorney                                        Aaron Siri, Esq. (admitted PHV)
West Virginia Bar No. 102159                                   Elizabeth A. Brehm, Esq. (admitted PHV)
411 Main Street                                                Walker D. Moller (admitted PHV)
P.O. Box 366                                                   Suzanne Heywood (admitted PHV)
Union, West Virginia 24983                                     745 Fifth Ave, Suite 500
Tel: (304) 772-4999                                            New York, NY 10151
Fax: (304) 772-4998                                            Tel: (212) 532-1091
jhb@johnbryanlaw.com                                           Fax: (646) 417-5967
                                                               aaron@sirillp.com
                                                               ebrehm@sirillp.com
                                                               wmoller@sirillp.com
                                                               sheywood@sirillp.com

                                                               Christopher Wiest (admitted PHV)
                                                               25 Town Center Blvd., Suite 104
                                                               Crestview, KY 41017
                                                               Tel: (513) 257-1895
                                                               Fax: (859) 495-0803
                                                               chris@cwiestlaw.com

                                                               *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2023, a true and correct copy of the foregoing was served by CM/ECF on all counsel or parties of record.

                                                               /s/ *John H. Bryan*