**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**WEST VIRGINIA PARENTS FOR
RELIGIOUS FREEDOM, PASTOR CHRIS FIGARETTI,**
and **JUDD UHL,**

                Plaintiffs,

      v.                                   **CIVIL ACTION NO. 5:23-CV-158**
                                                      Judge Bailey

**DR. MATTHEW CHRISTIANSEN,**
in his official capacities as the State
Health Officer and Commissioner of the
Bureau of Public Health,

                Defendant.

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND FOR
PERMANENT INJUNCTION AND GRANTING DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

Pending before this Court is plaintiffs' Motion for Summary Judgment [Doc. 48] and

accompanying Memorandum in Support [Doc. 49], filed May 31, 2023.  On June 30, 2023,

defendant filed a Cross-Motion for Summary Judgment [Doc. 52] and accompanying

Response in Opposition and Memorandum in Support [Doc. 53].   Plaintiffs filed a

Response in Opposition to defendant's Cross-Motion and Reply in Support [Doc. 61] on

July 23, 2023.  Defendant filed a Reply [Doc. 64] on July 26, 2023.[1]  Accordingly, this matter is ripe for adjudication.  For the reasons contained herein, plaintiffs' Motion will be denied, and defendant's Cross-Motion will be granted.

## BACKGROUND

This case involves a First Amendment challenge to W.Va. Code § 16-3-4, in which the State of West Virginia has enacted a secular medical exemption option to its mandatory vaccination requirements for children attending schools throughout the state ("the Compulsory Vaccination Law").

## I.  The Law at Issue

Since 2015, the Compulsory Vaccination Law has provided that "[n]o child or person may be admitted or received in any of the schools of the state or a state-regulated child care center" unless the child has been immunized against the following diseases: chickenpox, hepatitis-b, measles, meningitis, mumps, diphtheria, polio, rubella, tetanus, and whooping cough.  W.Va. Code § 16-3-4(c).  Section 16-3-4 provides a single exemption from this requirement for individuals who cannot safely receive specific vaccines.[2]

Under this framework, an individual seeking a vaccine exemption for a child may submit a request for an exemption "accompanied by the certification of a licensed physician stating that the physical condition of the child is such that immunization is

---

[1]Additionally, this Court has considered the amicus curiae briefing filed by the Attorney General of West Virginia [Doc. 46] and The Center for Rural Health Development, Inc. [Doc. 54].

[2]This exemption process is guided by § 16-3-4(h) and its supporting regulations, which are found at West Virginia Code of State Rules § 64-95-1, *et seq.*

contraindicated or there exists a specific precaution to a particular vaccine." W.Va. Code § 16-3-4(h)(1). Next, the State's Immunization Officer–a licensed physician who is appointed by the Commissioner–reviews the evidence obtained by the physician and determines if there is "sufficient medical evidence that an immunization is contraindicated or there exists a specific precaution to a particular vaccine." W.Va. Code R. § 64-95-17.4; § 64-95-16. The terms "contraindicated" and "precaution" are narrowly defined by statute.[3] If the Immunization Officer determines that there is sufficient evidence that an immunization is contraindicated or a particular precaution exists, an exemption will be granted. If not, a request for exemption is denied.

Under the statute, any denial by the Immunization Officer may be appealed to the State's Health Officer. W.Va. Code § 16-3-4(h)(4). At this stage, the state's rules permit the child's parent or guardian to submit additional evidence to support a contraindication or precaution warranting exemption. W.Va. Code R. § 64-95-17.8.d. The State Health Officer then reviews all the evidence and makes a determination regarding whether a contraindication or precaution has been substantiated "based on the preponderance of the evidence." W.Va. Code R. § 64-95-17.8(e). Finally, West Virginia Code § 16-3-4(h)(5)

_____

[3]More specifically, the statute defines "contraindication" as "a medical condition which renders an immunization improper for a particular individual." W.Va. Code R. § 64-95-2.4. The recognized contraindications for each vaccine are provided by the Advisory Committee on Immunization Practices from the Centers for Disease Control and Prevention.

A "precaution" is defined as "a condition defined under the current standards of immunization practice that might increase the chance or severity of an adverse vaccine reaction or compromise the ability of the vaccine to produce immunity." W.Va. Code R. § 64-95-2.10. Those defined conditions are similarly provided by the Centers for Disease Control and Prevention.

provides that the determination of the State Health Officer "is subject to a right of appeal" under West Virginia's Administrative Procedures Act.

## II.    The Parties

Plaintiff Pastor Chris Figaretti and plaintiff Judd Uhl are both members of plaintiff West Virginia Parents for Religious Freedom ("PRF").[4]  Both plaintiffs Figaretti and Uhl possess deeply held religious beliefs they claim prohibit them from vaccinating their children. [Doc. 1 at ¶¶ 25–30 & ¶¶ 41-45].[5]  According to plaintiffs, these strong religious beliefs create an insurmountable conflict with the Compulsory Vaccination Law because their children are categorically excluded from West Virginia's educational system based solely on their decision to refrain from vaccination.  See [Doc. 49 at 2–3].

Defendant Dr. Matthew Christiansen is West Virginia's State Health Officer as identified in the foregoing statutory scheme.

## III.   The Procedural Posture

On April 26, 2023, plaintiffs commenced this constitutional challenge of the Compulsory Vaccination law by pleading a single cause of action–violation of plaintiffs' free exercise rights under the First Amendment.  See [Doc. 1].  Two days later, plaintiffs filed a Motion for Preliminary Injunction and Expedited Consideration.  See [Doc. 4].  Following

---

[4]Plaintiff PRF was formed to advocate on behalf of parents whose unvaccinated children are excluded from the State of West Virginia's educational system.  Plaintiff PRF is a West Virginia, statewide, non-profit organization, established under West Virginia law and composed of parents and other citizens whose purpose is to seek and/or obtain, either through legislative change, or litigation, the establishment of a religious exemption process to vaccination requirements for schools and daycares, or the recognition by law of such exemptions.  See [Doc. 1 at ¶¶ 20–22].

[5]The sincerity of plaintiffs' deeply held religious beliefs is not contested by the parties.

4

a hearing on May 10, 2023, this Court denied plaintiffs' Motion seeking injunctive relief by finding no present threat of irreparable injury to plaintiffs.  In so doing, this Court also issued a summary judgment briefing schedule to the parties.

### A.    Plaintiffs' Arguments

Plaintiffs assert a variety of arguments in support of their contention that the Compulsory Vaccination Law violates the Free Exercise Clause of the First Amendment. More specifically, they argue that the Compulsory Vaccination Law fails the general applicability and neutrality tests thereby invoking strict scrutiny review. [Doc. 49 at 10].  In support, plaintiffs aver that the Compulsory Vaccination Law is not generally applicable because it allows for individualized discretionary review of medical exemptions, but not religious exemptions; the Compulsory Vaccination Law is neither neutral nor generally applicable because it treats secular conduct "more favorably" than "comparable" religious exercise; and the Compulsory Vaccination Law triggers strict scrutiny on alternative grounds because it infringes on constitutionally protected "hybrid" rights.  [Id. at 10–17]. Based on these arguments, plaintiffs assert that the Compulsory Vaccination Law cannot survive strict scrutiny review because the state's interests are not sufficiently compelling and the Compulsory Vaccination Law is not narrowly tailored.  As such, the Compulsory Vaccination Law is unconstitutional according to plaintiffs.

### B.    Defendant's Arguments

Defendant contends he is entitled to summary judgment on several independent grounds. First, defendant avers that this Court should abstain under ***Railroad Commision of Tex. v. Pullman Co.***, 312 U.S. 496, 501 (1941). [Doc. 53 at 9–10].  Next, defendant

argues that plaintiffs' sought after injunction of the Compulsory Vaccination Law will not provide the relief plaintiffs seek because they have failed to sue the proper state officer(s) under *Ex parte Young*, 209 U.S. 123 (1908), thereby depriving plaintiffs of Article III standing due to lack of redressability. [Id. at 11–14]. Further, defendant asserts that the Compulsory Vaccination Law is subject only to rational basis review, which the Law withstands. [Id. at 14–26]. Finally, and alternatively, defendant contends that even if the Compulsory Vaccination Law is subject to strict scrutiny review, the Law would satisfy that highest standard as well. [Id. at 27–30].

## LEGAL STANDARD

### I.      Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any

6

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

When cross-motions for summary judgment are before a district court, as here, the same standards of review are applied. *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983). Each motion must be considered individually on its own merits, and

the facts relevant to each must be viewed in the light most favorable to the non-movant. *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).  When considering each individual motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion.  *Rossignol*, 316 F.3d at 523 (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

## II.      The Free Exercise Clause of the First Amendment

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. amend I.  The "free exercise" component of the First Amendment applies to states through the Fourteenth Amendment, rendering "the legislatures of the states as incompetent as Congress to enact such laws."  *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).  Moreover, the Supreme Court of the United States has informed that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."  *Fulton v. City of Philadelphia*, 141 S.Ct. 1868, 1876 (2021) (internal quotations omitted).  In considering whether a plaintiff's rights under the Free Exercise Clause are infringed, a court must determine whether the plaintiff's religious exercise has been burdened and whether the burden the government has imposed is constitutionally permissible.  *Id*.  A plaintiff bears the burden of showing an infringement of his or her rights under the Free Exercise Clause; if such burden is met, "the focus then shifts to the defendant to show that its actions were nonetheless justified and tailored

8

consistent with the demands of [the Supreme Court of the United States'] case law." *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2421 (2022).

To establish a free exercise violation, a plaintiff may show that " a government entity has burdened his sincere religious practice pursuant to a policy that is not neutral or generally applicable." *Id*. at 2422 (internal quotation omitted).   If a plaintiff makes this showing, then there is a First Amendment violation unless the Government satisfies "strict scrutiny by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Id*. (internal quotation omitted).

In determining whether a law is neutral or generally applicable, "[a] law is not generally applicable if it invites the government to consider the particular reason for a person's conduct by providing a mechanism for individualized exemptions." *Fulton*, 141 S.Ct. at 1877 (internal quotation omitted).  A law also fails to be generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id*.  A policy is not neutral if it is "specifically directed at religious practice," meaning that it either "discriminates on its face" or "religious exercise is otherwise its object." *Bremerton*, 142 S.Ct. at 2422 (internal quotations omitted).  "Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny." *Id*.

## DISCUSSION

While this Court appreciates the extensive briefing by the parties as to the merits of this case, it is abundantly clear, based on a consideration of the posture of this case and applicable law, that pertinent abstention doctrine militates against this Court's consideration

of the merits as presented.  Abstention doctrines counsel that in certain circumstances federal courts should refuse to decide cases that are properly within their subject matter jurisdiction, "because of 'scrupulous regard for the rightful independence of state governments' and for the smooth working of the federal judiciary." *Railroad Commission of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941).  "*Pullman* abstention *requires* federal courts to abstain from deciding an unclear area of state law that raises constitutional issues because state court clarification might serve to avoid a federal constitutional ruling." *Nivens v. Gilchrist*, 44 F.3d 237, 245 (4th Cir. 2006); *Pullman*, 312 U.S. at 500. Abstention under *Pullman* is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959).  As noted by Senior United States District Judge John T. Copenhaver, Jr., while abstention is "the exception, not the rule[,]" there are nevertheless "carefully defined . . . areas in which . . . abstention is permissible." *West Virginia Citizens Defense League, Inc. v. City of Charleston*, 2012 WL 4320983, at *11 (S.D. W.Va. Sept. 20, 2012) (Copenhaver, Jr., J.) (citation omitted) (finding this Court's Order in favor of abstention in *West Virginia Citizens Defense League, Inc. v. City of Martinsburg*, 2011 WL 4074684 (N.D. W.Va. Sept. 13, 2011), *aff'd,* 483 F.App'x 838 (4th Cir. 2012) to be the appropriate course in suits implicating both federal claims and unadjudicated state claims that may obviate the need for a federal ruling).

It appears to this Court that this standard is patently satisfied here in consideration of the State of West Virginia's recent enactment of the Equal Protection for Religion Act,

West Virginia Code § 25-1A-1 (2023) ("the EPRA"), which provides that state action, such as the Compulsory Immunization Law at issue, cannot "substantially burden a person's exercise of religion" unless such action can withstand strict scrutiny.   W.Va. Code § 35-1A-1(a)(1).

Further, the State of West Virginia–who has taken plaintiffs' side–has stated that the EPRA is "directly relevant to the issues raised" by plaintiffs' complaint.   *See* [Doc. 46 at 6]. *See **Sonda v. W. Virginia Oil & Gas Conservation Comm'n**,* 2022 WL 17819635, at *3 (N.D. W.Va. Dec. 1, 2022) (abstaining under ***Pullman*** where West Virginia state law "is directly germane to the issues presented in this case") (Bailey, J.).   According to the argument here by the State of West Virginia, because the EPRA "requires governmental interests be furthered with the least restrictive means so as to not burden a person's exercise of religion," this Court should require defendant to "develop and implement" a religious exemption. [Doc. 46 at 6–7].

But in this federal constitutional challenge, the most hotly contested issue for decision posed to this Court is whether strict scrutiny applies under federal law.   However, the State of West Virginia has concluded that the newly enacted EPRA already expressly requires strict scrutiny for the same challenge raised here.   However, such a challenge has not been posed to the West Virginia state courts for adjudication.   Because EPRA may moot, or at minimum present the question in this case in a different posture, ***Pullman*** overwhelmingly compels that the state courts of West Virginia should be "afforded a reasonable opportunity to pass upon" the new enactment. ***AFA Distributing Co., Inc. v. Pearl Brewing Co.****,* 470 F.2d 1210, 1213 (4th Cir. 1973) ("[N]o principle has found more

11

consistent or clear expression than that the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them.") (quoting *Harrison v. NAACP*, 360 U.S. 167, 176 (1959)).

Plaintiffs' arguments against *Pullman* abstention do little to persuade this Court, especially when plaintiffs admit that there is a "separate [West Virginia state statute], with separate rights" that has the potential to resolve this issue without this Court having to render an opinion on a substantial federal constitutional question. [Doc. 61 at 10]. As such, principles of State sovereignty, comity under the federalist system, and the policy considerations articulated in *Pullman* weigh heavily against this Court retaining jurisdiction without "afford[ing] a reasonable opportunity to pass upon" the new enactment to the state courts. *See AFA Distributing Co., Inc.*, 470 F.2d at 1213.[6][7]

---

[6]Contrary to plaintiffs' position, abstention in this case would not "create a state court exhaustion requirement for § 1983 claims." [Doc. 61 at 12]. As identified by defendant, most cases filed under § 1983 do not pose the complicated, contested, and novel issue that is presented here. In most instances, the level of constitutional scrutiny applicable to a First Amendment claim is clear, but this case requires this Court to determine what level of scrutiny applies to a state statute that provides a single, apparently well-delineated exemption that purports to further the State of West Virginia's stated purposes. Accordingly, *Pullman* abstention here is limited to the circumstances of this case, which overwhelmingly merit it.

[7]This Court declines to follow the rationale applied in *Bosarge v. Edney*, 2023 U.S. Dist. LEXIS 67439 (S.D. Miss. Apr. 18, 2023) (granting preliminary injunction relating to state's vaccination scheme) as cited in plaintiff's briefing. Here, the arguments presented by the parties directly implicate the management and oversight of West Virginia's educational system, which is of paramount importance to the interests of the State. Accordingly, the state courts must have an opportunity to examine these issues first in order to maintain comity.

In finding that ***Pullman*** operates by necessitating this Court's abstention[8], this Court is cognizant of the Supreme Court of the United States' holding in ***England v. La. Bd. of Med. Examiners***, which instructed that federal courts should retain jurisdiction over the underlying case, but stay the proceedings so that state courts can rule on the state law question.  375 U.S. 411, 416 (1964).  If the state courts fail to resolve the issue articulated in this case, however, the parties may then return to this Court for a ruling on the constitutional issue.  *See* ***Nivens***, 444 F.3d at 245–46.

## CONCLUSION

For the reasons stated above, this Court will **ABSTAIN** from ruling on the substantive issues presented by this case.  The Clerk is **DIRECTED** to **STAY** this matter until such time that the claims addressed herein are presented to the state courts of West Virginia.   In the event that the state courts do not resolve this case, plaintiffs will be permitted to seek a ruling on the federal issues presented in this Court.

Accordingly, plaintiffs' Motion for Summary Judgment [**Doc. 48**] is **DENIED WITHOUT PREJUDICE**.  Defendant's Cross-Motion for Summary Judgment [**Doc. 52**] is **GRANTED IN PART**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

---

[8]In so finding, this Court declines, at present, to examine the merits of plaintiffs' substantive arguments.

13

**DATED**: August ___, 2023.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**

14